Per Curiam;
This case was referred to Trial Commissioner Saul Bichard Gamer (now Chief Commissioner) with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Buie 134(h). The commissioner has done so in an opinion and report filed on May 11, 1972. Exceptions to the commissioner’s opinion, findings of fact and recommended conclusion of law were filed by plaintiff and the case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court agrees with the commissioner’s opinion, findings of fact and recommended conclusion of law, as hereinafter set forth, it hereby adopts the *638 same as the basis for its judgment in this case. Therefore, plaintiff is not entitled to recover and the petition is dismissed.
OPINION OE COMMISSIONER
Gamer, Commissioner:
Plaintiff, an officer in the Marine Corps Reserve who was ultimately retired without pay by reason of length of service, claims he should have been retired earlier for disability. He sues for disability retirement pay from the date he claims he became permanently disabled for military service.
During a period while he was serving with his reserve unit on active duty for training, plaintiff was in an airplane which was obliged to make a crash landing. As a result of the accident, plaintiff’s second and third lumbar vertebrae were fractured. This injury constitutes the basis of plaintiff’s claim.[1]
Following the accident, which occurred on June 26, 1961, *639 plaintiff, then a captain, was hospitalized until July 6,1961. Upon his release the naval hospital’s clinical record concerning plaintiff indicated that he had incurred “a mild compression fracture of L2 and L3 [the second and third lumbar vertebrae] in good position”; that the “neurologic examination was negative”; that after “several days the acute symptoms [pain and limitation of motion of the lumbar spine] subsided without supervening neurologic degeneration,” allowing plaintiff “to ambulate ad-lib, with the advice to avoid acute flexion positions”; that by July 3, 1961, plaintiff “was able to ambulate without much discomfort and the pain in the back had largely subsided”; and that on the date of his release he had “a fair range of motion of the lumbar spine somewhat limited by pain.” The attending physician stated that “It is felt at this time that he is fit for full duty” and should be “discharged to same.” Plaintiff was thereupon released from the hospital “to full duty,” without a cast or a back brace. He was returned to his home in Atlanta, Georgia, where he operates an insurance agency.
However, following his return, plaintiff continued to suffer pain and to be inhibited by movement limitations. He was obliged to lie down and rest for lengthy periods. He was unable to be active, by direct personal solicitation out of his office, in the canvassing of new clients. On July 25,1961, i.e., less than three weeks after his release from the naval hospital, plaintiff applied to the Veterans’ Administration for disability compensation. On December 26, 1961, he was awarded such compensation on the basis of a disability rating of 50 percent.[2]
In February 1962, plaintiff, after a further examination by a Veterans’ Administration consultant, and upon his recommendation, began wearing a lumbosacral corset when not in a prone position, and taking medication to relieve the pain. (Since that time he has continued to wear such a device and to take medication when necessary.)
*640 The following month, plaintiff received active duty (Advance Mobilization) orders, but he protested that he did not consider himself “physically fit for military service” and requested a determination concerning his “eligibility for retirement.” Plaintiff’s request was referred to the Bureau of Medicine and Surgery for such a determination. Upon a review of his medical records, the Bureau, in May 1962, determined that, provided a waiver was issued, plaintiff’s disabilities were “not considered to be disqualifying for retention in the U.S. Marine Corps Beserve or for orders to active duty” (although they would be disqualifying for original appointment). It did conclude, however, that the impairment to plaintiff’s spine was sufficiently serious to warrant limiting his duty assignment and to assigning him to the “physical risk classification” of “C.” This classification (under the “Physical Bisk Classification Code (Officers)”), the third of five ratings, indicates that the officer is “physically qualified for active duty incident to mobilization only” and that he is “not qualified for transfer to or retention in the Beady Beserve.”[8] Thereupon, plaintiff was, in May 1962, placed in such risk classification and his active duty orders canceled.
In the meantime, by reason of his eligibility for promotion to the rank of major, plaintiff had, on April 7, 1962, been given a physical examination to determine his fitness for promotion. The examining physician concluded that plaintiff was “qualified for promotion * * * and to perform active duty at sea and in the field,” a conclusion with which the Bureau of Medicine and Surgery concurred. On August 10, 1962, plaintiff was advised that he had been appointed as a major in the Marine Corps Beserve.[4] However, by letter of August 22, 1962, to the Secretary of the Navy, plaintiff requested that, because of his disability, he be retired and be given disability retirement pay.
*641 Plaintiff’s request led to an evaluation of bis condition by a Physical Evaluation Board, which, after receiving a report of a Medical Board following a physical examination of plaintiff, concluded that plaintiff was “fit for duty.” [5] This finding was, upon the filing of a rebuttal by plaintiff, reviewed and concurred in by the Navy Physical Review Council,[6] and approved by the Secretary of the Navy on May 3, 1963.
Still contesting the determination that he had been fit for duty when he was released from the hospital on July 6, 1961, and that he was still so fit, plaintiff, on August 6,1963, filed an application with the Board for Correction of Naval Records requesting that his records be corrected to show retirement for disability dating from July 6, 1961.
While his application to the Correction Board was pending, plaintiff, on October 14, 1963, requested transfer to the Retired Reserve List without pay and allowances. The request was, based on plaintiff’s length of service, approved, and plaintiff was transferred to the Retired Reserve List on November 1, 1963.
Thereafter, plaintiff’s application to the Correction Board was, on February 9,1965, denied, the denial being reaffirmed on April 12 and September 22, 1965.
Plaintiff contends herein that the denial by the Secretary of the Navy of his request for disability retirement, and the refusal by the Board for Correction of Naval Records to correct his records so as to show retirement for disability, were arbitrary, capricious, not supported by the evidence, and in contravention of the pertinent statutes and regulations. The record fails to support the contentions.
The Secretary’s action of May 3,1963 was well supported. The Physical Evaluation Board appointed to make a recommendation on plaintiff’s claim had before it the report of a Medical Board based on a physical examination of plaintiff. The Medical Board, composed of three doctors, reported that, *642 at the time of such examination of plaintiff in January 1963, plaintiff had “a normal gait without limp,” “good muscle power in the lower extremities,” and “an excellent hop on each leg”; that, although plaintiff’s back muscles “were judged to be moderately weak and exhibited slight para-spinal spasm,” there was, nevertheless, “a full range of lumbar spine motion” with no neurological problems; and that, while the Board felt that plaintiff was “experiencing significant discomfort * * * due to an old healed compression fracture with resultant disc degeneration and chronic back strain in the injured area,” the “disability might well be decreased by a spine fusion of the involved area,” a procedure which plaintiff did not desire at that time.[7] One of the four members of the Evaluation Board was a doctor. And the Physical Review Council which, after considering plaintiff’s rebuttal, reviewed and concurred in the finding, similarly contained a doctor as one of its three members. Further, the Secretary also had before him the results of the 1962 physical examination given to plaintiff to determine his fitness for promotion to major, with the medical conclusion resulting therefrom that plaintiff was qualified for such promotion “and to perform active duty at sea and in the field.” Certainly, the record does not support the contention that the Secretary’s action was without evidentiary support and was therefore arbitrary and capricious.
Similarly, the record demonstrates that the Correction Board’s conclusion that plaintiff’s application should be denied was well supported by the record before it. Upon receipt of plaintiff’s application (which was supported by various statements of laymen concerning plaintiff’s condition on July 6, 1961, when he was released from the naval hospital), the Board forwarded all of plaintiff’s naval records to the Naval Physical Disability Review Board for the purpose of obtaining an advisory opinion.[8] This Board, in addition, obtained *643 all of plaintiff’s VA records. The Board, two of whose five members were doctors, advised the Correction Board that “After review of the entire record in this case, it is the unanimous opinion of the Board that the petitioner was fit for duty at the time of separation from active duty on 6 July 1961.”
Plaintiff was then given the opportunity of filing a rebuttal to the Beview Board’s opinion. Plaintiff did submit a lengthy rebuttal, again supported by various statements, including one by the orthopedic surgeon who 'had first examined and treated plaintiff at the private hospital to which plaintiff was first taken after the accident, and another by a doctor who had, as a VA consultant, examined plaintiff several times since 1962.
Thereupon, the Correction Board felt that it should, in view of plaintiff’s rebuttal, obtain another advisory opinion. Accordingly, it submitted plaintiff’s entire record, including the rebuttal, to the Bureau of Medicine and Surgery for such an opinion. After a complete review of the case, including plaintiff’s rebuttal and the doctors’ statements contained therein, the Bureau too advised that, in its opinion, plaintiff was fit for duty as of July 6,1961.
Naturally, plaintiff emphasizes his 50 percent rating under the VA’s standard schedule of rating disabilities for the purpose of receiving VA disability compensation payments. He points out that under the statutes he would be entitled to receive military retired pay for a disability determination by the Secretary of the Navy of as little as 30 percent under the same VA schedule.[9]
While the Navy’s failure to assign even a 30 percent disability rating in a situation where the VA assigns a 50 percent rating, with both agencies being required by statute to use the same rating schedule, may appear to be somewhat anomalous, nevertheless, as the court has often held, a disability compensation rating by the VA is not determinative of the issues involved in a disability retirement determination by the military. Unterberg v. United States, 188 Ct. Cl. 994, 1003, 412 F.2d 1341, 1346 (1969); Furlong v. United States, 153 Ct. Cl. 557, 565 (1961); Wales v. United States, 132 Ct. *644 Cl. 765, 769, 130 F. Supp. 900, 903 (1955); Holliday v. United States, 128 Ct. Cl. 647, 649 (1954). In Unterberg too the court held that the determination of the Secretary of the Navy and the Board for Correction of Naval Records that plaintiff was fit for duty would not be upset despite a determination by the YA of a 50 percent service-connected disability. VA disability ratings are made under different statutes and for different purposes. They are based upon “average impairments of earning capacity resulting from such injuries in civil occupations.”[10] While the disability rating assigned by the VA for its purposes is a proper item of evidence to be weighed by the military together with all other evidence, Wesolowski v. United States, 174 Ct. Cl. 682, 693 (1966), the military’s determination is, nevertheless, directed to the sole question of whether the particular member of the armed forces “is unfit to perform the duties of his office, grade, rank, or rating * * [11] Plaintiff was an operations officer of an air control squadron. Such a squadron controls airplanes by radar. The operations officer is responsible for supervising the controllers. His duties are primarily administrative. The determination by the VA that plaintiff’s disability would materially impair his earning capacity in his civilian occupation was not inconsistent with the determination by the Secretary of the Navy, in view of the substantial medical evidence, that plaintiff could, despite his disability, satisfactorily perform “the duties of his office, grade, rank, or rating.” Absent “a clear showing” that the Navy “acted arbitrarily or capriciously, or contrary to applicable statutes and regulations,” the court will “not interfere with the [Navy’s] determination of who is able, or unable, to perform active duty * * Wesolowski v. United States, supra at 688, and cases cited therein. The evidence shows that the determinations of the Secretary of the Navy and the Board for Correction of Naval Records, as well as the recommendations made to them by the various boards, were all made with full *645 knowledge of the VA 50 percent disability rating, which, plaintiff repeatedly brought to their attention.[12]
Plaintiff argues that he does in fact have a physical disability as the term is defined in Chapter 2, Section 0213(a) of the Navy Disability Separation Manual of February 2, 1959, which was in effect during the time pertinent herein. That section defines the term as follows:
Any manifest or latent impairment of function due to disease or injury regardless of the degree of impairment. * * *
However, subsections (a) and (c) of Section 0215, which is entitled “Unfit Because of Physical Disability,” recognize that the mere presence of a physical disability is not determinative of the question of fitness for duty. They specifically provide:
(a) A member is unfit because of physical disability when he is unable, because of physical disability, to perform the duties of his office, rank, grade or rating in such a manner as to reasonably fulfill the purpose of his employment on the active list.
* * * *
_ (c) The mere presence of physical disability or of a disability ratable in terms of the Veterans Administration Schedule for Bating Disabilities, or the fact that the party concerned is currently on the sick list or hospitalized, does not require a finding of unfitness for duty.[13]
The court’s decisions have long recognized that a member of the armed forces may be “suffering from some physical disability at the time he was found fit for active military duty,” Wesolowski v. United States, supra, at 688, but that, nevertheless, “[n]ot all ailments or disabilities are incapacitating to the extent of requiring retirement.” Wales v. United States, supra, 132 Ct. Cl. at 769, 130 F. Supp. at 903.
*646 To rebut the administrative determination that he was fit for duty as of July 6,1961, plaintiff has presented considerable evidence to establish that he was in fact suffering from severe pain on that date and in the period immediately thereafter. Rather than being fit for duty at that time, he was, he says, actually almost wholly incapacitated, finding it necessary to lie down for long periods during the day because of his inability to stand or sit for any substantial period of time. This is not, however, the proper test. The above-mentioned Navy Disability Separation Manual at that time provided, in Section 0215 (b):
* * * [A] member convalescing from an illness or injury and who is likely to recover to a degree which would permit him to perform all of his duties in the near future is to be considered fit for duty.[14]
The statutory test is whether “the disability is of a permanent nature.” [15] Even a medical opinion which plaintiff submitted to the Correction Board in rebuttal of the Physical Disability Review Board’s advisory opinion that plaintiff “was fit for duty at the time of separation from active duty on 6 July 1961,” i.e., the opinion of the orthopedic surgeon who first treated plaintiff after the accident before he was moved to the naval hospital, which stated that “In my opinion he could not, in any way, have been qualified for active duty on July 6,1961,” went on to add, however, that “In my opinion he could not have been qualified for duty before October 1961.” Plaintiff’s condition not only improved markedly during his short period of hospitalization, but also following his release from the hospital on July 6, 1961. The lumbosacral corset he has worn upon medical advice since February 1962 has served to alleviate his pains. And, as noted above, medical opinion is that his condition would be further improved were he to have a spine fusion operation of the vertebrae involved.
As evidence of his unfitness for duty, plaintiff also points to his assignment to the physical risk classification “C,” which carried with it the determination that he was not *647 physically “qualified for transfer to or retention in the Beady Beserve.” Such reliance is misplaced. The assignment to this classification actually indicates fitness for duty, although with qualifications. As indicated above, it grew out of the Bureau of Medicine and Surgery’s conclusion, in processing plaintiff’s request for a determination of his eligibility for disability retirement, that, although plaintiff “presented certain impairments which, while disqualifying for original appointment * * *, are not considered to be disqualifying for retention in the U.S. Marine Corps Beserve or for orders to active duty * * * provided a waiver is issued.” Accordingly, the Bureau stated that “In the event it is desired to order [plaintiff] to active duty, the defects” consisting of the fractures of his vertebrae “should be waived.” As hereinabove noted, the Bureau further stated, however, that plaintiff’s impairment was “considered to be of sufficiently serious nature or severity” as to make it likely that his duty assignment would be limited (and to warrant that a notation be made on a control card maintained in Marine Corps headquarters to such effect), and that “ [t]he appropriate physical risk classification” for such a situation was “C.” As pointed out, under the Physical Bisk Classification Code for Officers, this classification indicates that the officer is “physically qualified for active duty” but “incident to mobilization only.” It is a different classification — “5”—that indicates that the officer is not physically qualified for retention in the Marine Corps Beserve at all. The fact that plaintiff’s qualification for active duty was limited to mobilization orders is not the equivalent of a finding that, in the language of Code classification “5,” he was “not physically qualified for retention in the Marine Corps Beserve,” or, in the language of the statute, that he was “unfit to perform the duties of his office, grade, rank, or rating because of physical disability * * There are here no regulations such as were involved, for instance, in Powers v. United States, 176 Ct. Cl. 888 (1966), where it was shown that “[t]he applicable Army regulations then in effect * * * provided that an officer was incapacitated for active service if he were permanently physically * * * incapable of performing full military duty (i.e., general serv *648 ice), field as well as garrison, in both, peace and war, even though he could perform limited service with the supply arms and services.” [at 398] Thus, there is no question presented here of the possible conflict between a limited service designation and a regulatory requirement that an officer be considered disqualified for active service if he is not able to perform full military duty of the type described in Powers.
Defendant particularly emphasizes plaintiff’s promotion to the rank of major in August 1962 following the Bureau of Medicine and Surgery’s finding, based on a physical examination, that plaintiff was “physically qualified for duty at sea and in the field.” Plaintiff responds that that examination and finding, and his subsequent promotion, are actually in his favor because, according to his interpretation, the promotion was effected under that part of Marine Corps Persomiel Manual Article 6202.1b (3) which provides that, although “the physical standards for promotion shall be the same as those which may be prescribed for retention,” nevertheless, no physically disqualified reserve officer should be excluded “from the promotion to which he would otherwise be regularly entitled” where a medical board reports “that his physical disqualification for duty at sea or in the field was occasioned by wounds received in the line of duty * * Plaintiff says that his promotion under this provision is proof that he was in fact found to be physically disqualified for active duty, and that his promotion was effected only because, under the special exception, his disqualification was due to the “wounds” he received from the accident and which occurred “in the line of duty.”
Plaintiff’s interpretation of the basis of his promotion cannot be accepted. The Personnel Manual article in question provides that “Deports of physical examination for promotion, on Standard Form 88, will be forwarded to the Commandant of the Marine Corps.” An examination of the Standard Form 88 of plaintiff’s physical examination made on April 7, 1962 to determine his fitness for promotion fails to indicate in any way that plaintiff was considered to be physically disqualified. After expressing the opinion that plaintiff was “considered physically qualified in accordance *649 with. Marine Corps Personnel Manual art. 6202.1b (3),” the physician concluded that “Examinee is qualified for promotion to the next higher rank and to perform active duty at sea and in the field.” The reference to the Personnel Manual article is, thus, to the whole article, which sets forth the general standards for promotion physicals for Marine Keserve officers, and not merely to the single exception provision upon which plaintiff relies.[16] Nor is there any indication that the Chief of the Bureau of Medicine and Surgery, Who made the final recommendation to the Commandant of the Marine Corps concerning plaintiff’s physical fitness for promotion, concluded that plaintiff was not physically qualified but that he was nevertheless eligible because his “wounds” were received “in the line of duty.” On the other hand, he reported that “the subject officer is considered to have been physically qualified for duty at sea and in the field when examined on 7 April 1962.” Similarly, the notification of August 10, 1962 which the Commandant gave to plaintiff of his promotion gave no indication that the “wounds received in line of duty” exception was the basis for his promotion. Further evidencing the inapplicability of the exception upon which plaintiff relies is the fact that the article containing it requires that the finding of physical disqualification for duty be made by a medical board, and as of April 7,1962, plaintiff had not 'had any medical board examination of his condition.
In further support of his interpretation concerning the basis of his promotion, plaintiff relies on the statements made in the reports of two physical examinations he had in 1965. Both were made at plaintiff’s request by a doctor at the U.S. Naval Air Station in Atlanta. In denying his application on February 9,1965, the Correction Board had advised plaintiff that he was “privileged to submit new and material evidence for consideration,” and plaintiff was seeking additional evidence to reopen his case. The two examinations were denominated “special.” The conclusions reached were identical, stating that plaintiff’s promotion to major in 1962 was based upon the “wounds received in line of duty” exception in Marine Corps Personnel Manual Article 6202.1b (3), and *650 that “In summary, in April 1962 Major Bennett was not physically qualified in accordance with physical standards but in view of the article mentioned above he was found physically qualified for promotion.” The doctor concluded that plaintiff “is not qualified for active duty at sea on foreign service and in the field.”
As already shown, these “special” examination conclusions find no support in the record. There is no explanation of how the doctor arrived at them.[17] They are, as indicated, in fact directly contradicted by the findings reported by the April 1962 examining physician and in the subsequent documents based on that examination. Accordingly, they are of little value.
Plaintiff submitted to the Correction Board the results of the two 1965 special examinations. However, the Board refused to consider them as “new and material evidence” and reaffirmed its previous denial. Plaintiff contends that the Board was arbitrary in not considering the special examination reports and the conclusions set forth therein as constituting “new and material evidence” warranting, at least, a reopening or reconsideration of his case. However, since, as above shown, the premises upon which the conclusions set forth in such reports were so obviously erroneous, the Correction Board was entirely justified in refusing to consider them as “material evidence” warranting a reconsideration of plaintiff’s case.
For the reasons indicated, plaintiff is not entitled to recover.
FINDINGS OF FACT
1. Plaintiff, a citizen of the United States, was born on June 4,1924.
2. Plaintiff enlisted in the United States Marine Corps on July 15,1941, and served on active duty until his separation *651 therefrom on November 14, 1945, at which time he held the rank of sergeant. He returned to active duty in the Maxine Corps as a commissioned officer on June 17,1951, and served until November 19,1952, attaining the rank of first lieutenant. Thereafter he remained in the Marine 'Corps Reserve, serving various periods of active duty for training purposes. Prior to June 26,1961, plaintiff had been promoted to captain.
3. (a) On June 26, 1961, plaintiff was serving on active duty for training with his organized reserve unit at the Marine Air Reserve Training Detachment, Naval Air Station, Marietta, Georgia. Plaintiff was the operations officer of an air control squadron. The squadron controlled airplanes by radar, and plaintiff was responsible for supervising the controllers, i.e., making certain that they were on duty and that they were properly performing their duties, which included the supervision of the men under them. His duties were pi'i-marily of an administrative nature. However, when in the field, plaintiff, in proceeding to the site of operations, would have to carry weapons, ammunition, and his pack. Plaintiff was not a flying officer and did not operate the airplane.
(b) On that date plaintiff sustained a compression fracture of the second and third lumbar vertebrae as the result of the crash landing near Lynchburg, Virginia, of the aircraft in which he was a passenger. The accident occurred while plaintiff was in the line of duty, and was not the result of misconduct.
4. (a) Following the accident, plaintiff was taken to a civilian hospital, the Lynchburg General Hospital, Lynch-burg, Virginia, where his injury was diagnosed and treated. Treatment consisted of bed rest and analgesics. Plaintiff’s attending physician while at the hospital was Dr. James B. Jones of Lynchburg.
(b) On June 30,1961, plaintiff was transferred to the U.S. Naval Hospital, Portsmouth, Virginia. His Clinical Record-Narrative Summary, dated July 6,1961, stated as follows:
PE: Physical examination revealed tenderness over the area of L2 and L3. There was no gross deformity of the back. There was a moderate amount of bilateral muscle spasm and marked limitation of motion of the lumbar spine secondary to pain. The neurologic examination was *652 negative. The chest and abdomen were within normal limits.
LAB: Laboratory examination revealed a WBC of 19,351 with a normal differential. Urinalysis was within normal limits. Repeat CBC was within normal limits. A serology was negative. X-ray of the chest was normal. X-ray of the lumbar spine on films brought in with the patient revealed a mild compression fracture of L2 and L3 in good position.
COURSE: The patient was placed on bedrest in a firm bed, analgesics, hydrocolator packs and sedation was given as necessary. In several days the acute symptoms subsided without supervening neurologic degeneration. After the acute symptoms subsided he was allowed to ambulate ad-lib, with the advice to avoid acute flexion positions. By 7-3-61 he was able to ambulate without much discomfort and the pain in the back had largely subsided. At the present time he has a fair range of motion of the lumbar spine somewhat limited by pain. There is still mild muscle spasm bilaterally. He is ambulating without much discomfort. It is felt at this time that he is fit for full duty and is to be discharged to same.
Plaintiff’s attending physician who prepared and executed the record was Lieutenant R. C. Colgrove. The record was approved by Captain C. A. Stevenson, the Chief of the Oi’tho-pedic Service.
(c) On July 6,1961, plaintiff was released from the Portsmouth Naval Hospital to full duty, without a cast or back brace, but with instructions for conservative back care. He returned to his home in Atlanta, Georgia, by airplane, suffering considerable discomfort from Iris back injury during his journey.
(d) In civilian life, plaintiff operated an insurance agency in Atlanta, Georgia. Upon his return from the hospital, plaintiff found his business activities had to be limited because of his disability, the limitations in movement it produced, and the pain he suffered therefrom. For some time he was unable to be active, by direct, personal solicitation, in the canvassing of new clients, being for the most part confined to his office or his home where he was obliged, because of the necessity to lie down and rest for lengthy periods, to conduct his business principally over the telephone.
*653 (e) By a letter dated July 17, 1961, from the Commandant of the Marine Corps, plaintiff was advised that he had been on active naval service during the period of hospitalization commencing June 26, 1961, and that pursuant to the provisions of 10 TJ.S.C. § 6148(a) (1958), he was eligible for disability benefits.
( f) On July 25,1961, plaintiff applied to the Veterans’ Administration for compensation based upon the disability resulting from his injuries.
5. (a) On August 11, 1961, plaintiff was given a physical examination by naval medical personnel at the Naval Air Station, Marietta, Georgia, for the purpose of determining whether he was qualified for retention in the U.S. Marine Corps Reserve. Plaintiff complained to the examining physician that his hack was very weak and that he was almost continually suffering from severe backache, with accompanying dull headaches; that coughing and sneezing gave him intense and Sharp pains in the area of ¡his injury; and that his civilian activities had been greatly limited. He advised that he had applied to the Veterans’ Administration for compensation for his disability. The findings of the examining physician, Dr. R. B. Andrew, were as follows:
There is moderate paraspinous muscle spasm and localized tenderness to pressure over the lumbar spine, particularly L3. There is marked rigidity of movement. Ventral flexion of the spine is limited by pain to approximately 30°. Dorsal flexion is unimpaired. The degree of disability exhibited at this time is CD [considered disqualifying].
The conclusion of the examiner was that plaintiff “is not qualified for retention in USMCR.”
(b) On August 26, 1961, the commanding officer of plaintiff’s organized reserve unit requested that plaintiff be transferred to Class III, U.S. Marine Corps Reserve, pending final action in regard to his physical status, the report of plaintiff’s examination of August 11,1961, having been submitted to the Commandant of the Marine Corps via the Bureau of Medicine and Surgery. The request was approved, the effective date of plaintiff’s transfer to Class III being August 25,1961.
*654 (c) On August 26, 1961, plaintiff was assigned to Headquarters, Marine Training Corps, Naval Air Station, Glen-ville, Illinois, in an inactive status. He Has not performed active duty for training since bis release from the Portsmouth Naval Hospital on July 6,1961.
6. (a) On November 14, 1961, plaintiff was, as a result of his application for disability compensation, given a physical examination by medical personnel of the Veterans’ Administration. The report of the examination stated:
There is some loss of the normal lumbar lordosis. Mild spasm of the erecti spinal muscles in the lumbar region is present. Flexion of the lumbar spine is limited from 180-to-150 degrees. Hyperextension and lateral bending and circumduction are limited to approximately 20% of normal. There is a slight gibbous formation palpable over L2 and L3, and some tenderness in this area on percussion.
The radiographic report made in connection with such examination stated:
The lumbar spine is viewed in AP and Lat. projections. It is noted that there is some loss, of the normal lumbar curve. There is an old, compression fracture of the third lumbar vertebra, superior anterior surface, with anterior displacement of the fragment. This has reunited to the body of the vertebra, but still shows some anterior displacement. There is also a marked irregularity in the superior plate of the 2nd lumbar vertebra, and considerable narrowing of the intervertebral space in this area — suggesting possibility of fracture of the superior plate or at least a severe disc injury in this area.
(b) On December 26, 1961, the Veterans’ Administration awarded plaintiff a service-connected disability rating of 50 percent under Diagnostic Code 5285 and 5292 of the 1945 Schedule for Eating Disabilities. The schedule was based on average impairment of earning capacity. It provided for a 60 percent rating for the residuals of fracture of vertebra, without cord involvement, where abnormal mobility requiring a neck brace was present. In other instances, the evaluation was required to be made in accordance with definite limited degrees of motion or muscle spasm, with an addition *655 of 10 percent for a deformity of tire vertebral body. A slight degree of limitation of motion of -the lumbar spine was ratable at 10 percent, moderate at 20 percent, and severe at 40 percent. It was determined that the fracture residuals of the second and third lumbar vertebrae were ratable at 40 percent, as for severe limitation of motion of the lumbar spine, with the addition of 10 percent for demonstrable deformity of the third lumbar vertebral body, thus resulting in a 50 percent disability evaluation.
(c) Plaintiff disagreed with the 50 percent disability rating by the Veterans’ Administration and filed a claim for a 60 percent rating.
(d) Complaining of low back pain with activity, plaintiff was examined in the Veterans’ Administration outpatient clinic by an orthopedic consultant on February 13, 1962. Medication was prescribed, and the wearing of a lumbo-sacral corset was recommended.
7. (a) On March 7, 19,62, plaintiff received Advance Mobilization Orders.
(b) On March 16, 1962, plaintiff by letter informed the Commander of the Marine Air Reserve Training Command, U.S. Naval Air Station, Glenville, Illinois, that “Due to a pending 60% disability rating,” i.e., his claim therefor made to the Veterans’ Administration, “I consider myself not physically fit for military service.” Plaintiff requested a determination by the Bureau of Medicine and Surgery of his “eligibility for retirement.”
(c) On March 28, 1962, plaintiff’s appeal to the VA for a 60 percent disability rating was denied and the 50 percent rating of December 26,1961 affirmed.
8. Plaintiff had been eligible for promotion to the rank of major since July 1, 1961. On April 7, 1962, he was given a physical examination at the Naval Air Station, Marietta, Georgia, to determine his fitness for promotion. The Report of Medical History shows that plaintiff stated with respect to his health:
Good — One Exception — Must wear a brace to control the residuals of back injury which occurred in line of duty on 26 June ’61 — plane crash.
*656 Plaintiff also reported bis receipt of disability payments from the VA. The examining physician, Dr. B. B. Andrew, expressed the opinion that plaintiff “is considered physically qualified in accordance with Marine Corps Personnel art. 6202.1b (3).” His conclusion was that “Examinee is qualified for promotion to the next higher rank and to perform active duty at sea and in the field.” Dr. Andrew was the same doctor who had, on August 11,1961, concluded that plaintiff was not qualified for retention in the Marine Corps Beserve.
9. (a) Plaintiff’s letter of March 16, 1962, requesting a determination by the Bureau of Medicine and Surgery of his eligibility for retirement resulted in a review by the Bureau of plaintiff’s medical record. On May 24, 1962, the Chief of the Bureau of Medicine and Surgery notified the Commandant of the Marine Corps as follows:
1. The subject officer’s available medical record has been reviewed in connection with his physical fitness for service. It is noted that he has presented certain impairments which, while disqualifying for original appointment * * * are not considered to be disqualifying for retention in the U.S. Marine Corps Beserve or for orders to active duty * * * provided a waiver is issued * * *.
2. In the event it is desired to order him to active duty the defects listed below * * * should be waived * * *
compression fractures L2 and L3
3. The impairment, noted in paragraph 2 above, is considered to be of sufficiently serious nature or severity to warrant notation on a control card in the Headquarters, U.S. Marine Corps since it is likely to limit his duty assignment. The appropriate physical risk classification is “C”.
(b) On May 29, 1962, the Commandant of the Marine Corps returned to the Commander, Marine Air Beserve Training, the Advance Mobilization Orders which had been issued to plaintiff and informed the Commander that the physical risk classification “C” should be assigned to plaintiff in accordance with the recommendation of the Bureau of Medicine and Surgery. Under the “Physical Bisk Classification Code ( Officers),” this classification indicates that the officer is “Physically qualified for active duty incident to mobilization only — is not qualified for transfer to or retention in *657 the Beady Reserve.” There is also a physical risk classification “4,” which indicates “Not physically qualified for active service, transfer to, or retention in the Ready Reserve, or active duty for training at this time,” and a classification “5,” which indicates “Not physically qualified for retention in the Marine Corps Reserve.”
10. (a) On July 25,1962, the Chief of the Bureau of Medicine and Surgery informed the Commandant of the Marine Corps regarding plaintiff’s physical fitness for promotion, as follows:
The subject officer is considered to have been physically qualified for duty at sea and in the field when examined on 7 April 1962.
(b) On August 10, 1962, the Commandant of the Marine Corps advised plaintiff that he had been temporarily appointed as a major in the Marine Corps Reserve retroactive to July 1,1961, and that plaintiff was entitled to increased pay and allowances from such date.
11. (a) By letter of August 22, 1962, to the Secretary of the Navy, plaintiff stated: “I respectfully request to be retired and to receive Disability Retirement pay in accordance with” 10 U.S.C. § 1204 (1958). He further stated that “the severity of injuries that I received on 26 June 1961” warranted an award of “over 30% disability” by the VA; that “I must wear a brace, when not in a prone position, to control the residuals of the deformed lumbar vertebra number three” ; and “I respectfully request that a Physical Evaluation Board consider my case at its earliest convenience.”
(b) The cited 10 U.S.C. § 1204 (1958) provides in pertinent part:
Upon a determination by the Secretary concerned that a member of the armed forces not covered by section 1201, 1202, or 1203 of this title is unfit to perform the duties of his office, grade, rank, or rating because of physical disability resulting from an injury, the Secretary may retire the member with retired pay computed under section 1401 of this title, if the Secretary also determines that—
(1) based upon accepted medical principles, the disability is of a permanent nature;
*658 (2) the disability is the proximate result of performing active duty or inactive-duty training;
(3) the disability is not. the result of the member’s intentional misconduct or willful neglect * * *; and
(4) * * *
*****
(B) the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Veterans’ Administration at the time of the determination.
(c) By orders of September 21, 1962, plaintiff was authorized to report to the TJ.S. Naval Hospital, TJ.S. Naval Base, Charleston, South Carolina, for a Medical Board examination and an evaluation by a Physical Evaluation Board.
12. On January 28,1963, plaintiff was admitted to the TJ.S. Naval Hospital, Charleston, South Carolina, for a physical examination by a Medical Board and an evaluation by a Physical Evaluation Board of his claim for disability retirement. The report of the three doctors comprising the Medical Board, which was based on the examination and a review of plaintiff’s records, was transmitted to the commanding officer of the hospital on February 11, 1963. Included in the portion of the report relating to plaintiff’s history were plaintiff’s statements to the effect that, since he had been released from the hospital following the accident, he had continued to experience a pinching pain in the area of the fractured vertebra; that the pain was aggravated by lifting, prolonged standing or sitting, and coughing; that he found it necessary to get off his feet frequently; that the pain became progressively worse as the day wore on, causing occipital headaches; that the back pain and headache occurred daily, the back pain being partially alleviated, however, by the use of a lumbosacral support; that discomfort had prevented him from performing prescribed exercises; that his ability to sell insurance and run his business had been curtailed by the pain and his limited endurance; that although hospitalization had not been required, he was obliged to have a special office chair and an analgesic about four times monthly for unusual discomfort, as well as the frequent use of a heating pad and aspirin; and that his ability to indulge *659 in athletics and healthful physical activity had been curtailed. The pertinent findings and conclusions reported are as follows:
* * * well developed, well nourished, white male in no acute distress, alert and cooperative. The patient demonstrated a normal gait without limp and with good muscle power in the lower extremities and an excellent hop on each leg. * * * Back muscles were judged to be moderately weak and exhibited slight paraspinal spasm, as well as a prominence of the spine of the second lumbar vertebra producing light gibbus. However, there was a full range of lumbar spine motion. Neurological examination was within normal limits and vertical spine compression did not cause acute discomfort.
* * * X-rays of the lumbar spine, including oblique views, revealed slight anterior wedging of the body of L3, with narrowing of the interspace between the bodies of L2 and L3 consistent with an old healed compression fracture of L3, comminuted, and with resultant degeneration of the disc space between L2 and L3.
There was no active therapy indicated or instituted during this hospitalization. Opinion of the Board is that this man is experiencing significant discomfort as described above due to an old healed compression fracture with resultant disc degeneration and chronic back strain in the injured area. Disability might well be decreased by a spine fusion of the involved area. (The patient does not desire fusion at this time.)
13. On February 13, 1963, a special orthopedic examination was made by the VA. Plaintiff complained of a “pinching-type” low back pain when he bent over and then assumed an erect position, as well as on prolonged standing. The examiner reported that the physical and X-ray findings remained essentially unchanged since the examination of November 14, 1961. He did find that:
* * * There was evident a slight increase in the range of flexion and hyperextension. Both lower extremities were equal in length. Straight leg raising, Lasegue’s test and Kernig’s test were negative. Knee jerks and ankle jerks were active and equal.
The examiner also noted that the lumbosacral corset plaintiff was wearing afforded “a great deal of relief and enables him to work at his job as an insurance salesman”; that plain *660 tiff was la “well-developed, well-nourished, 38-year-old white male in no acute or chronic distress”; and that “ [h]e disrobes, mounts and turns on the examining table without difficulty.”
14. (a) On February 21, 19.63, plaintiff’s request for disability retirement was considered by a Physical Evaluation Board consisting of four members. One of the Board members, i.e., the senior member, Captain Wilford A. Bisteen, was a member of the Medical Corps, U.S. Naval Keserve. Plaintiff waived appearance before the Board in person or by counsel. The Board unanimously recommended, on the basis of the record, that plaintiff be found “fit for duty as of 26 June 1961.”
(b) On February 25, 1963, plaintiff filed a rebuttal to the recommended finding of the Board. He relied on his 50 percent VA rating made in December 1961 and the further VA examination made on February 13, 1962, resulting in the use of a lumbosacral corset, and his Physical Bisk Classification Code “C.” As to his promotion to major, he stated that, in accordance with a Navy regulation, such “promotion to Major was made exclusive of any service connected disability.”
15. (a) On March 26, 1963, the Veterans’ Administration confirmed its previous 50 percent disability rating of plaintiff.
(b) On April 3,1963, plaintiff filed with the VA his notice of disagreement and requested the higher evaluation of 60 percent. He stated that he suffered from a “pinching” and aching back day and night; that he had to wear a brace all day; and that as a result, his physical activities were limited, preventing him from participating in all active sports.
16. (a) The proceedings of the Physical Evaluation Board, including plaintiff’s rebuttal, were reviewed by the Navy Physical Beview Council on May 2, 1963. The Council consisted of three members, one of whom was a member of the Naval Medical Corps, attached to the Bureau of Medicine and Surgery. The Council unanimously concurred in the finding of the Board “except that the finding should be as of 6 July, 1961, the date party was released from the U.S. Naval Hospital, Portsmouth, Virginia.”
*661 (b) The proceedings and findings of the Physical Evaluation Board, as concurred in and modified by the Physical Review Council, were approved by the Secretary of the Navy on May 8, 1963. On May 8, 1983, the Commandant of the Marine Corps advised plaintiff that “the Secretary of the Navy has found that you are fit to perform the duties of your grade.” The Commandant of the Marine Corps, on May 24, 1963, advised the Director, 6th Marine Corps Reserve and Recruitment District, that plaintiff was “Found fit to perform the duties of his rank or rating,” and that plaintiff “is considered fit for active duty or fit for duty in an active status in the Marine ¡Corps without physical limitations. He should be assigned duties in the Marine Corps Reserve accordingly.”
17. On May 29, 1963, plaintiff filed with the Commandant of the Marine Corps a “Petition for Review” of his case by a Physical Disability Review Board.
18. On May 31, 1963, the VA advised plaintiff that, after reviewing his entire record, it had concluded that the evidence did not justify a change in its 50 percent disability rating, with respect to which rating plaintiff had filed a notice of disagreement. Plaintiff was advised that he could, if he so desired, appeal to the Board of Veterans Appeals.
19. On July 29,1963, plaintiff was advised by the Commandant of the Marine Corps that plaintiff’s petition to the Physical Disability Review Board for review of the action of the Navy Physical Review Council had been denied because the Review Board did not have jurisdiction to review the case, the Review Board’s jurisdiction extending only to cases in which the release from active duty was for physical disability without pay pursuant to the recommendation of a Physical Evaluation Board. The Commandant further advised plaintiff that he could, if he wished, file a petition with the Board for Correction of Naval Records.
20. On August 6, 1963, plaintiff filed an application with the Board for Correction of Naval Records, requesting that his records be corrected to show retirement for disability dating from July -6, 1961. In support of his application, plaintiff submitted various documents setting forth his Marine Corps and VA history, as well as the following:
*662 (a) A statement from William G. Merrick, the District Agency Manager of the State Farm Insurance Company, which plaintiff’s insurance agency represented, stating that he had visited plaintiff at his home on July 7, 1961; that plaintiff was able to sit or stand for only short periods; that up to the time he was furnished a brace by the YA, he was able to be up only two or three hours a day; that plaintiff had to operate his agency principally from his bed; and that, in his opinion (as an ex-Marine himself), plaintiff could not have performed the physical duties of a marine on July 6,1961.
(b) A statement dated May 22, 1963, from Marine Corps Lt. Colonel L. E. Tucker stating that he and plaintiff had been released together from the Portsmouth Naval Hospital on July 6, 1961, and had traveled together to Atlanta that day, and that plaintiff was in considerable pain, could walk slowly and with difficulty, and had to be assisted on and off the aircraft.
(c) A letter dated May 23, 1963, from Marine Corps Eeserve Colonel Leland W. Smith stating that he had been at the Naval Air -Station in Atlanta, Georgia, on July 6,1961, when the aircraft in which plaintiff was traveling landed and had seen plaintiff, in considerable pain, being assisted from the plane to his car by a sergeant and by plaintiff’s wife.
(d) A statement (undated) by the pastor of the church plaintiff attended stating that he visited plaintiff on July 7, 1961; that plaintiff could not stand or sit for even short periods of time; and that plaintiff had been incapacitated from his back injury since it occurred.
21. (a) While plaintiff’s request for correction of his record was pending, he applied, on October 14,1963, for transfer to the Eetired Eeserve List without pay and allowances. The request was based both on alleged physical disqualification and on length of service.
(b) On October 25, 1963, by direction of the Secretary of the Navy, plaintiff was notified that his request for retirement, based on length of service, was approved and that he would be transferred to the Eetired Eeserve List as of November 1, 1963.
22. On November 14, 1963, the Board for Correction of *663 Naval Records forwarded all of plaintiff’s naval personnel and medical records to the Naval Physical Disability Review Board for tire purpose of obtaining an advisory opinion as to whether the injuries plaintiff received on June 26,1961, warranted his retirement for physical disability. The Review Board, in addition, obtained all of the YA records. The Review Board met on September 15,1964, to consider plaintiff’s case. The Board consisted of five members, two of whom were members of the Medical Corps, U.S. Navy. It reviewed all pertinent records, including the proceedings and determinations of the Physical Evaluation Board and the Veteran's’ Administration. On September 16, 1964, the Review Board submitted its advisory opinion to the Board for Correction of Naval Records. The “Opinion” of the Review Board was as follows:
a. After review of the entire record in this case, it is the unanimous opinion of the Board that the petitioner was fit for duty at the time of separation from active duty on 6 July 1961.
b. The individual members of the Board were polled and are of the unanimous opinion that, since the records in this case were voluminous and complete, the interests of the petitioner and of the Government are so well protected that a formal hearing before this Board will not be necessary.
23. (a) On September 23, 1964, the Board for Correction of Naval Records sent the advisory opinion of the Naval Physical Disability Review Board to plaintiff’s representative, the Military and Naval Affairs Officer of the Disabled American Veterans, and advised plaintiff of his right to submit additional evidence or to file a rebuttal.
(b) Plaintiff submitted a rebuttal dated October 17,1964, which plaintiff’s representative forwarded to the Correction Board on October 22, 1964. Plaintiff stated that he had not been fit for duty as of July 6,1961, or at any time thereafter, and that naval medical findings and opinions to the contrary were erroneous. Plaintiff also submitted a number of statements, as follows:
1. A statement dated October 7, 1964, by Dr. James B. Jones of Lynchburg, Virginia, an orthopedic surgeon, who *664 bad examined and treated plaintiff at tbe Lynchburg General Hospital following the airplane crash and prior to plaintiff’s transfer to a military hospital on June 30, 1961. The statement read in pertinent part:
Captain Bennett was transferred from the Lynchburg General Hospital on June 30, 1961, and he has not been seen as a patient since that time. At the time of his transfer from Lynchburg General Hospital, I felt he should be kept off his feet until he could be fitted with a brace. I would have expected that he would have been kept in a brace for approximately three months following the date of injury. In my opinion he could not, in any way, have been qualified for active duty on July 6, 1961. In my opinion he could not have been qualified for duty before October, 1961.
2. A statement dated October 8,1964, by Dr. Irvin Blum-enthal, an Atlanta consultant to the Veterans’ Administration. Dr. Blumenthal stated that he had examined plaintiff several times in that capacity; that plaintiff suffered low back pain since his injury, aggravated by prolonged standing, and by bending and lifting; that plaintiff had been unable to engage in any athletic activities “and has had no radiation into the lower extremities”; that plaintiff had been fitted with a lumbosacral corset to wear during acute episodes ; and that plaintiff had been given analgesics for pain. Dr. Blumenthal concluded:
From the examinations conducted on this patient since 1962 it is my opinion that the patient is unfit for any type of duty or work which would require bending, stooping or lifting. The Veterans Administration has awarded this man a 50% disability and in my opinion this is in keeping with the amount of disability he has at the present time. If the patient’s symptoms persist it may be necessary that he consider spinal fusion in the future.
3. The statement dated May 22,1963, by Lt. Colonel Tucker described in finding 20(b).
4. The statement dated May 23,1963, by Colonel Leland W. Smith described in finding 20 (c).
5. A statement dated October 17, 1964, by Lt. Colonel Pitsinger, who was the commanding officer of plaintiff’s or *665 ganized reserve unit at the time of plaintiff’s injury (finding 5 (b)). This officer stated that plaintiff had reported for duty on August 25 and 26, 1961, in connection with a regularly scheduled drill period during such weekend but, due to his incapacitation, “he was unable to perform his duties as a Marine Officer”; that he has been in constant contact with plaintiff since then and, in his opinion, plaintiff “is certainly not qualified to perform the physical duties of a Marine.”
6. The statement of Mr. William G. Merrick described in finding 20 (a).
7. The statement by plaintiff’s pastor described in finding 20(d).
24. (a) Following the receipt of plaintiff’s rebuttal, the Board for Correction of Naval Records, on November 17, 1964, transmitted plaintiff’s entire record, including the rebuttal, to the Bureau of Medicine and Surgery for the purpose of obtaining another advisory opinion in light of plaintiff’s rebuttal.
(b) The Bureau advised on December 18,1964, that, upon a complete review, it had concluded that plaintiff’s rebuttal, taken as a whole, did not constitute new material evidence not already considered by the Naval Physical Disability Review Board. The Bureau concurred in the opinions of the naval boards that plaintiff was fit for duty as of July 6,1961.
25. On February 9,1965, the Board for Correction of Naval Records denied plaintiff’s application. The Board stated that plaintiff had failed to present sufficient evidence “to indicate probable material error or injustice.” Plaintiff was advised that he was “privileged to submit new and material evidence for consideration.”
26. (a) On March 31, 1965, and again on June 30, 1965, plaintiff was given physical examinations at the U.S. Naval Air Station in Atlanta. Both examinations were made by Dr. E. D. Roberts, and were made at plaintiff’s request. Plaintiff was attempting to secure new evidence to reopen his case before the Correction Board. Both examination reports, made on Standard Form 88, denominated the examinations as “special,” and the conclusions reached were identical, as follows:
On physical examination of 7 April 1962 for promotion, Major Bennett was found physically qualified for *666 promotion to the next higher rank and to perform active duty at sea and in the field in accordance with Marine Corps Personnel Manual art. 6202.1b (3) which is quoted below in part: “However, the foregoing provisions shall not exclude from the promotion to which he would otherwise be regularly entitled any Reserve officer in whose case a medical board may report that his physical disqualification for duty at sea or in the field was occasioned by wounds received in the line of duty.” In summary, in April 1962 Major Bennett was NOT PHYSICALLY QUALIFIED in accordance with physical standards but in view of the article mentioned above he was found physically qualified for promotion.
In each report, Dr. Roberts stated that plaintiff “is not qualified for active duty at sea on foreign service and in the field.”
(b) Plaintiff, through Representative James A. Mackay, forwarded the report of the special examination of March 31, 1965, to the Board for Correction of Naval Records, together with other materials. By letter of April 12, 1965, Congressman Mackay was advised by the Board, through its Executive Secretary, that “The information forwarded with your recent letter is identical to or similar to information previously available and considered. Unless Major Bennett has some new and material evidence, the Board’s denial of his application must remain final.”
(c) Plaintiff also submitted the report of the special examination of June 30, 1965, to the Board, and on September 14, 1965, Senator Richard B. Russell also wrote to the Correction Board on plaintiff’s behalf. By letter of September 22, 1965, Senator Russell was advised by the Board, through its Executive Secretary, that “No new and material evidence has been received by the Board from Major Bennett. In event such evidence is received, it will be carefully and conscientiously considered * *
(d) Marine Corps Personnel Manual Article 6202.1b (3), referred to in the reports of the two special physical examinations of March 31 and June 30, 1965, and in the report of plaintiff’s physical examination of April 7,1962, made to determine his fitness for promotion (finding 8), is as follows:
(3\ Physical examinations for promotion shall, if practicable, be conducted by two medical officers and one *667 dental officer of the Navy, Naval Reserve, or both. If it is impracticable to assemble such examining officers without incurring mileage or other expenses, the physical examination may be conducted by one medical officer of the Regular Navy or of the Naval Reserve. In the absence of available medical officers of the Regular Navy or the Naval Reserve, the Commandant of the Marine Corps, with concurrence of the Surgeon General of the Navy, may authorize physical examinations by other (Qualified physicians. The physical standards for promotion shall be the same as those which may be prescribed for the retention in the Marine Corps Reserve. However, the foregoing provisions shall not exclude from the promotion to which he would otherwise be regularly entitled any Reserve officer in whose case a medical board may report that his physical disqualification for duty at sea or in the field was occasioned by wounds received in the line of duty, and that such wounds do not incapacitate him for other duties in the grade to which he shall be promoted. Reports of physical examination for promotion, on Standard Form 88, will 'be forwarded to the Commandant of the Marine Corps (Code DHD).
27. Plaintiff’s injuries have inhibited his ability, in the operation of his insurance agency, to canvass new clients. However, the income from his agency has been consistent from the period prior to his injury until the present time. A substantial part of such income has been composed of renewals from business written prior to his disability.
28. Plaintiff filed his petition in this court on March 21, 1967, claiming entitlement to disability retired pay from July 6,1961, the date of his release from active duty, computed at the rate of 50 percent of the basic pay of a major with his length of service, less the amounts of disability compensation paid to him by the Veterans’ Administration. Plaintiff alleges that the actions of the Secretary of the Navy and of the Board for Correction of Naval Records in denying his request for disability retirement and in determining that he was fit for duty as of July 6,1961, were arbitrary, capricious, contrary to statute and regulation, and not supported by the evidence.
29. The parties initially proceeded by plaintiff’s motion and defendant’s cross-motion for summary judgment. How *668 ever, by order of December 19, 1969, the court denied the motions without prejudice and remanded the case to the trial commissioner for trial. A trial was held on March 18, 1971. Plaintiff was the sole witness. Aside from plaintiff’s testimony, the evidence in the case consists of the same naval and YA documents which were presented to the court on the parties’ motions for summary judgment.
ULTIMATE FINDING
30. Plaintiff has not established by a preponderance of the evidence that the actions of the Secretary of the Navy and the Board for Correction of Naval Eecords were arbitrary, capricious, unreasonable, without adequate support in the evidence, or in conflict with the pertinent statutes and regulations.
CONCLUSION OF LAW
Upon the foregoing findings of fact and opinion, which are adopted by the court and made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover and the petition is dismissed.

 10 u.S.C. § 6148 (1958), 70A Stat. 383, provides In pertinent part:
§ 6148. DISABILITY AND DEATH BENEFITS : NAVAL RESERVE AND MARINE CORPS RESERVE.
(a) A member of * * * the Marine Corps Reserve * * * who Is ordered to active duty, or to perform Inactive-duty training, for any period of time, and is disabled in line of duty from injury while so employed * * * is entitled to the same pension, compensation, * * * hospital benefits, and pay and allowances as are provided by law or regulation in the case of a member of * * * the Regular Marine Corps of the same grade and length of service. Nor the purpose of this subsection, a member who is not in a pay status shall be treated as though he were receiving the pay and allowances to which he would be entitled if serving on active duty.
10 U.S.C. § 1204 (1958) 70A Stat. 93, provides in pertinent part:
§ 1204. MEMBERS ON ACTIVE DUTY FOR 30 DAYS OR LESS ; DISABILITY FROM INJURY : RETIREMENT.
Upon a determination by the Secretary concerned that a member of the armed forces * * * is unfit to perform the duties of his office, grade, rant, or rating because of physical disability resulting from an injury, the Secretary may retire the member with retired pay * * * it the Secretary also determines that—
(1) based upon accepted medical principles, the disability is of a permanent nature;
(2) the disability is the proximate result of performing active duty or inactive-duty training; * * * and
» » * » *
(B) the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Veterans’ Administration at the time of the determination.

 Under the VA Schedule for Rating Disabilities, the fracture residuals of the vertebrae were ratable at 40 percent, the degree of limitation of motion of the lumbar spine being rated as “severe” (the schedule providing for 10 percent for a slight degree of limitation, 20 percent for moderate, 40 percent for severe, and 60 percent for abnormal requiring a neck brace), plus 10 percent for a deformity of the third lumbar vertebral body.

 The two lower ratings are Classification 4, which Indicates that the officer Is “not physically qualified for active service, transfer to, or retention In the Ready Reserve, or active duty for training at this time,” and Classification 5, which indicates that the officer is “not physically qualified for retention In the Marine Corps Reserve.”

 The appointment (a temporary one) was made retroactive to July 1, 1961, from which date plaintiff had been eligible for promotion.

 The Board's recommendation was that plaintiff be found “fit for duty as of 26 June 1961,” i.e., the date of the accident.

 Except that the Council concluded that the finding of fitness for duty should be “as of 6 July, 1961,” i.e., the date plaintiff was released from the naval hospital.

 The record does not indicate that plaintiff has ever had such an operation.

 Plaintiff had attempted to appeal to this Board from the decision of the Physical Review Council, but the Board had no such appellate jurisdiction. The Board’s jurisdiction extended only to cases in which the release from active duty was, pursuant to the recommendation of a Physical Evaluation Board, for physical disability, but without pay.

 See note 1, supra.

 “The Administrator [of Veterans’ Affairs] shall adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries. The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations. * * *" 38 U.S.C. § 355 (1958), 72 Stat. 1125.

 Note 1, supra.

 Plaintiff disagreed with the VA 50 percent rating and filed an appeal seeking a 60 percent rating. The appeal was denied.

 Subsection (d) goes on to provide that:
In determining whether a party who has a physical disability is fit for duty or unfit because of physical disability, it is necessary to correlate the nature and degree of functional impairment with the requirements of the duties to which the member may be assigned in the rank, grade or rating in which serving.

 The Navy’s current regulation to this effect is substantially identical. 32 C.F.R. § 725.229(c) (Supp. 1973).

 Note 1, supra.

 The article is set forth in full in finding 26(d).

 The parties initially proceeded in this case by motions for summary judgment. However, by order of December 19, 1969, the court denied the motions without prejudice and remanded the case to the commissioner for trial. At the trial, plaintiff was the sole witness. Aside from his testimony, the evidence in the case consists of the same naval and VA documents pertaining to plaintiff which were presented to the court on the parties' motions for summary judgment.