George E. **GOLDING**
v.
The **UNITED STATES.**
No. 50376.

United States Court of Claims.
May 3, 1955.

Abraham B. Hertz, New York City, for plaintiff.

LeRoy Southmayd, Jr., Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiff sues for an increase in his retired pay, to which increase he claims to be entitled under the provisions of the Career Compensation Act of 1949, 63 Stat. 802, 37 U.S.C.A. § 231 et seq.

The plaintiff became an officer in the United States Marine Corps Reserve in 1926. Between that time and November 1, 1940, he had some 12 years of inactive status and some 3 years of active service with the Civilian Conservation Corps. On November 1, 1940, he again entered on active duty, with the rank of major. However, on August 1, 1941, he was found, on a physical examination, not fit for duty and was placed on the inactive list. In February 1942, he appeared before a Naval Retiring Board which found that his incapacity was a result of coronary heart disease, with secondary asthma; that it was incurred in line of duty and was permanent.

The findings of the Naval Retiring Board were approved by the Secretary of the Navy who transmitted them to the President with the recommendation that the President approve the findings and place the plaintiff on the retired list. The President did so, and, as of April 1, 1942, the plaintiff was placed on the retired list with pay in conformity with the provisions of 34 U.S.C.A. § 417, as extended by section 4 of the Act of August 27, 1940, 54 Stat. 864, 34 U.S.C.A. § 855c–1. Since that time, the plaintiff has been receiving retired pay in the amount of $257.82 per month, which is 75% of the basic pay of a major as of the time of the plaintiff's retirement.

The Career Compensation Act of 1949, section 411, 63 Stat. 823, and the regulations promulgated by the President pursuant thereto, Executive Order No. 10124, 15 F.R. 2375, 37 U.S.C.A. § 281 and note, authorized the review, within 5 years from the date of the statute, of the cases of persons such as the plaintiff, who were already receiving disability retired pay. In this review, to be made by a Physical Review Council, a certain percentage of disability was to be determined for the officer and, using that percentage as one factor, a computation was to be made of the amount of retired pay which he should receive. The statute placed an upper limit of 75% of active duty pay, but the active duty pay on which it was to be computed was the higher active duty pay of 1949 instead of the active duty pay of the officer at the time of his retirement, which, in the case of the plaintiff, was 1942.

If the review pursuant to the Career Compensation Act had resulted in the determination of a high percentage of disability to the plaintiff, he would have become entitled, under the Act, to $84.18 more retired pay per month. The Physical Review Council, in 1950, reviewed the plaintiff's medical records and, basing its ratings on the Schedule for Rating Disabilities in current use by the Veterans' Administration, arrived at a 40 percent disability for the plaintiff, 30 percent for coronary heart disease and 10 percent for asthma. The 40 percent disability rating did not entitle the plaintiff to any higher retired pay than he was then receiving.

The plaintiff appealed the determination of the Physical Review Council to the Physical Disability Appeal Board, Navy Department. The plaintiff claimed

before that Board that he was entitled to a disability rating of 100%. But the Appeal Board affirmed the 40% rating of the Review Council, and its decision was approved by the Secretary of the Navy on May 1, 1951.

In this suit the plaintiff asserts that the administrative determination was contrary to the statutes and was capricious and arbitrary. He relies heavily upon the fact that the Veterans' Administration on August 11, 1949, determined that from the time of the termination of the plaintiff's active service in 1941, he had been totally disabled and entitled to a waiver of the premium on his National Service Life Insurance. The Government's response is that the Veterans' Administration never examined the plaintiff for pension purposes, and therefore never made a determination of percentage of disability; that its decision to waive premiums on a life insurance policy did not, in fact, involve the application of the same standards as those used for determining the right to a pension. We have no doubt that the Veterans' Administration itself would not make the same kind of thorough study of a case when all that was at stake was the waiver of life insurance premiums as it would make if the determination involved the right to a pension.

 Section 402(a) (3) of the Career Compensation Act provides that the percentage of disability shall be determined in accordance with the standard schedule of rating disabilities in current use by the Veterans' Administration. But the determination is to be made by the Secretary, or by those to whom he delegates the task, and not by the Veterans' Administration. If the Veterans' Administration schedule provided for a certain percentage of disability for the loss of an arm or a leg, there would, of course, be no room for a departure by the Secretary from that percentage. But where, as in the plaintiff's case, heart disease and asthma are involved, the percentage is a matter of degree. The Veterans' Administration schedule, given in our finding 14, shows four different percentages of disability for each of these diseases. For the purposes of the Career Compensation Act, it was for the Secretary and his doctors, and not for the Veterans' Administration and its doctors, to decide the degree of the plaintiff's afflictions. There is no evidence that the decision was not conscientiously made by those to whom Congress entrusted its making.

The plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.