**Arnold CHAMPAGNE, Plaintiff,**

**v.**

**UNITED STATES, Defendant.**

No. 94–983C.

United States Court of Federal Claims.

March 15, 1996.

Jeffrey Wood, York, PA, attorney of record for plaintiff.

Sean P. Murphy, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, with whom were Assistant Attorney General Frank W. Hunger, Director David M. Cohen, and Assistant Director James M. Kinsella, attorneys of record for the defendant, and Lt. Randolph N. Blair, Jr., JAGC, USNR, General Litigation Division, Department of the Navy, Arlington, VA, of counsel.

## OPINION

HORN, Judge.

This case is before the court on cross-motions for summary judgment, pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). Plaintiff, Arnold Champagne, filed a complaint in this court against the United States, acting through the Department of the Navy, challenging the disability rating assigned to him by the Navy after he sustained an injury during his tour of duty in May 1991. Plaintiff alleges that he is entitled to damages totalling "$1,000,000.00, representing the difference between the retirement pay due him under 10 U.S.C. § 1201, and the severance pay he received upon his discharge from the Navy in August 1992." In response, defendant filed a motion for summary judgment, alleging that the disability rating assigned to the plaintiff was consistent with applicable statutes and regulations, was not arbitrary or capricious, and was supported by substantial evidence. Thereafter, plaintiff filed an opposition to defendant's motion for summary judgment and a cross-motion for summary judgment. In his cross-motion for summary judgment, plaintiff argues that the disability rating assigned to him by the Navy was arbitrary, capricious, and inconsistent with applicable regulations. The facts before this court on the parties' cross-motions for summary judgment are undisputed, and, therefore, the case is ripe for summary disposition.

## FACTS

Based on the record before the court, plaintiff, Arnold Champagne, appears to have served in the United States Navy on active duty for a total of approximately nine and one-half years. Documents in the record show that plaintiff first served in the United States Navy on active duty from July 1959 to July 1963. Subsequently, plaintiff served on active duty from October 1963 to October 1967. Most recently, plaintiff served on active duty from January 1991 to August 1992, in support of Operation Desert Shield/Desert Storm.

According to a report of the Medical Board issued by the Naval Hospital in Oakland, California, included in the record, and dated November 5, 1991, plaintiff suffered an injury to his left shoulder while lifting heavy equipment, during the time he was on active duty in Jubail, Saudi Arabia for Operation Desert Shield/Desert Storm on April 14, 1991. Plaintiff described his symptoms as sharp left neck, shoulder and arm pain, followed by general weakness in his left shoulder, neck, arm and hand. During the same tour of duty, plaintiff also experienced an acute onset of wheezing following an oil refinery fire in the Jubail area. In a report issued by the Naval Hospital in Oakland, California, on September 5, 1991, plaintiff was diagnosed with mild cervical spondylosis, without compromise of the cervical cord and bilateral foraminal stenosis at C6–7. Subsequently, in a report, likewise issued by the Naval Hospital in Oakland, California, dated January 30, 1992, plaintiff was also diagnosed with "left C5 brachioplexopathy,[1] improving" and "reactive airway disease, improving." Plaintiff proceeded to receive subsequent physical evaluations regarding his fitness for duty and eligibility for benefits, in accordance with the rules and regulations established by the Navy.

Congress has provided guidelines for the retirement or separation of military members of the Armed Forces due to a physical disability. 10 U.S.C. § 1201 (1988). The Secretary of the Navy also established policies and procedures regulating implementation of the disability system, which can be found in the Secretary of the Navy Instructions, ("SEC-NAVINST") § 1850.4C (March 8, 1990). The SECNAVINST establishes a Physical

---

1. Diseases of the brachial plexus such as brachioplexopathy cause a mixed motor and sensory disorder of the corresponding limb. Disorders of the brachial plexus produce disability about the shoulder. Cervical spondylosis is a condition in which degenerative changes in the intervertebral disk narrow the cervical canal causing arm weakness and atrophy. Spinal stenosis is an uncommon form of sciatica that results from lumbar spinal canal narrowing, causing pressure on the roots prior to their exit from the foramina, and mimics vascular disease by simulating intermittent claudication. Gradwohl's Legal Medicine (3d ed. 1977), pp. 1217, 1292–93, 1442, 1456.

Evaluation Board ("PEB") to act on behalf of the Secretary of the Navy when making determinations of fitness for duty, entitlement to benefits, and disposition of service members referred to the Board. SECNAVINST 1850.4C § 6a.

An individual enters the Navy Disability Evaluation System when a Medical Board[2] finding of disability is forwarded and accepted for review by the PEB. A Medical Board determines the clinical state of health of a service member whose ability to physically perform on active duty is in question. SECNAVINST 1850.4C § 2016. The Medical Board then forwards the case to the PEB, which, if it accepts the case, makes a record review of the case and issues preliminary findings. SECNAVINST 1850.4C § 2002. The individual concerned is then notified of the preliminary findings and is given fifteen (15) calendar days in which to accept or disagree with the findings. *Id.* If the member accepts the preliminary findings, then the case is finalized and disposition in accordance with the preliminary finding is directed. *Id.* If the member disagrees with the findings, the member may request reconsideration by the same panel, if additional information is submitted, and/or request a formal hearing before the Physical Evaluation Board Hearing Panel ("Hearing Panel"). *Id.*

If a Hearing Panel hears the case, it makes findings of fitness for duty and determines a percentage of disability. Subsequent to legal review and/or quality assurance review, the case is finalized and appropriate disposition is directed. *Id.* If a member disagrees with the results, he or she can either petition internally to the Director, Naval Council of Personnel Boards, or to the Board for the Correction of Naval Records. *Id.* The Director of the Naval Council of Personnel Boards reviews the Physical Evaluation Board Hearing Panel's decision and determines if relief is warranted based upon the merits of the case. The petitioner is then advised by certified letter of the determination. SECNAVINST 1850.4C § 6(i).

In determining the disability of a service member, the standard of review applied by the military is "unfitness to perform the duties of office, grade, rank, or rating because of disease or injury incurred or aggravated while entitled to basic pay." SECNAVINST 1850.4C § 2050. In making this determination, the nature and degree of physical disability is considered in relation to the requirements and duties that a service member is reasonably expected to perform in his or her office. *Id.*

On October 28, 1991, the Navy's Medical Board concluded that plaintiff had spondylosis at the sixth and seventh cervical sections, brachioplexopathy at the fifth cervical section, improving, and reactive airway disease, improving. The Medical Board determined plaintiff was unfit for full duty and forwarded the report to the Central Physical Evaluation Board Record Review Panel ("PEB") for a disability determination. Plaintiff was advised of the recommendations of the Medical Board and declined to submit a statement in rebuttal.

On January 8, 1992, the PEB made a preliminary finding that plaintiff was fit for duty. Subsequently, in February 1992, plaintiff requested reconsideration of the PEB's finding of "Fit for Duty," and requested a finding of "Unfit" and placement on the disability list. Plaintiff also appointed the Disabled American Veterans National Service Office as his representative. The PEB considered plaintiff's request for reconsideration, but recommended no changes in the PEB findings. Plaintiff, therefore, requested and received a formal hearing before the Hearing Panel.

In April 1992, the PEB Hearing Panel reviewed plaintiff's case. Plaintiff appeared before the Hearing Panel on April 7, 1992, and requested a finding of unfit for duty with disability ratings under Veterans Affairs Schedule for Rating Disabilities ("VASRD") Code 6602 at ten percent (10%), VASRD Code 8518 at ten percent (10%), and VASRD

---

**2.** A Medical Board can be convened by commanding officers and commanding officers of naval hospitals, the Chief of Naval Operations, the Chief of Naval Personnel, the Surgeon General, and other medical treatment facilities designated by the Chief of the Bureau of Medicine and Surgery. SECNAVINST 1850.4C § 2018.

Code 5219 at ten percent (10%), for a combined total disability rating of thirty percent (30%). A disability rating by the Navy of thirty percent or greater entitles a service member to placement on the Navy's Temporary Disabled Retirement List ("TDRL"), and entitles an individual to enhanced benefits. In support of his plea for enhanced disability ratings, plaintiff submitted medical reports indicating that he had undergone two electromyographic ("EMG") examinations, which showed acute and chronic denervation in the C5 nerve root and possible chronic C7 nerve injury as well.[3]

Following plaintiff's hearing, the PEB Hearing Panel cited Mr. Champagne's mild reactive airway disease and his dominant left shoulder nerve impairment as minimal, found plaintiff unfit for duty, and assigned plaintiff a combined disability rating of ten percent (10%). The PEB Hearing Panel determined that plaintiff's "unfitting conditions were incurred as a direct result of armed conflict and while engaged in extrahazardous service ...," and ordered plaintiff separated from naval service with severance pay, but without further disability benefits in accordance with the provisions of 10 U.S.C. §§ 1203 or 1206, as appropriate. The Panel found plaintiff's left C5 brachioplexopathy improving, and appropriate for a zero percent (0%) disability rating under VASRD Code 8518.[4] As stated in the Hearing Panel's report, dated April 24, 1992: "The dominant left shoulder nerve impairment is minimal. according to medical record entries but is also considered unfitting afloat due to weakness." The PEB Hearing Panel concluded that plaintiff's shoulder weakness and discomfort were due to nerve damage and the shoulder could not be rated further without pyramiding. In addition, the

PEB Hearing Panel determined that plaintiff's reactive airways disease prevented plaintiff from working in smoky or dusty environments such as cargo holds, rendering him unfit for duty in the Navy. Accordingly, plaintiff's reactive airways disease was rated as a ten percent (10%) disability under VASRD Code 6602.

On May 15, 1992, plaintiff petitioned the Director of Naval Council of Personnel Boards for relief from the action of the Hearing Panel, requesting a disability rating of forty percent (40%) and placement on the Temporary Disability Retired List. With his petition, plaintiff again submitted evidence, consisting of medical reports which indicated that plaintiff had undergone two EMG examinations. The Director denied plaintiff's request, and affirmed and finalized the action of the Hearing Panel on June 12, 1992. On August 3, 1992, plaintiff was separated from active duty and received severance pay in the amount of seventy-two thousand, seven hundred eighty-four dollars and eighty cents ($72,784.80).

On March 15, 1993, the United States Department of Veterans Affairs ("VA") made a finding of a combined disability rating for plaintiff of forty percent (40%) for the same medical complaints for which the Navy previously had rated plaintiff at a total of ten percent (10%). The VA evaluated plaintiff at a twenty percent (20%) rating, effective August 1992, for left cervical brachioplexopathy under VASRD Code 8510. Plaintiff's spondylosis and stenosis at the sixth and seventh cervical sections were each rated at ten percent (10%) under VASRD Codes 5010 and 5290, also effective August 1992. The VA

---

3. The first EMG, performed on August 1, 1991, showed acute and chronic denervation in the C5 nerve root and possibly in other nerve root levels or brachial plexus. The second EMG, performed on April 4, 1992, showed evidence of chronic changes of either the C5 or C6 nerve root and possible chronic C7 nerve injury as well, and indicated that injury to the posterior cord of the brachial plexus could not be ruled out by the study.

4. Section 4.124a of title 38, Code of Federal Regulations, elaborates on the criteria for rating this condition as follows:

Circumflex nerve
8518 Paralysis of:
Complete; abduction of arm is impossible, outward rotation is weakened; muscles supplied are deltoid and teres

minor ............................50
Incomplete;
Severe ............................30
Moderate...........................20
Mild ..............................0"

38 C.F.R. 4.124a (1992).

decision indicated that in their opinion these two ratings involved separate functions.

Subsequently, plaintiff filed the above-captioned lawsuit in this court claiming that the ratings assigned by the Navy for plaintiff's left brachioplexopathy at the fifth cervical section and the rating assigned for plaintiff's spondylosis and stenosis violate SECNA-VINST 1850.4C §§ 2111, 2112, and 5280. Plaintiff claims damages in the amount of one million dollars ($1,000,000.00), representing the alleged difference between retirement pay under 10 U.S.C. § 1201 and the severance pay he received upon his discharge from the Navy in August 1992. Plaintiff also seeks alteration of any and all Navy records to reflect a combined disability rating evaluation of forty percent (40%). Plaintiff contends that his service records should be altered to reflect a forty percent (40%) rating, as follows: twenty percent (20%) rating for the brachioplexopathy, ten percent (10%) rating for the cervical spondylosis, and ten percent rating (10%) for the bilateral stenosis.

### DISCUSSION

■ Summary judgment in this court should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56 of this court is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) and is similar in language and effect.[5] Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ Rule 56(c) of the Rules of the United States Court of Federal Claims (RCFC) provides that in order for a motion for summary judgment to be granted, the moving party bears the burden of demonstrating that there are no genuine issues of material fact

and that the moving party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Creppel v. United States*, 41 F.3d 627, 630–31 (Fed.Cir. 1994); *Meyers v. Asics Corp.*, 974 F.2d 1304, 1306 (Fed.Cir.1992); *Rust Communications Group v. United States*, 20 Cl.Ct. 392, 394 (1990); *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. 674, 679 (1990), *aff'd*, 944 F.2d 885 (Fed.Cir.1991). Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury [trier of fact] could return a verdict for the non moving party." *Id.; see also Uniq Computer Corp. v. United States*, 20 Cl.Ct. 222, 228–29 (1990).

■ When reaching a summary judgment determination, the judge's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. at 2510–11; *see, e.g., Cloutier v. United States*, 19 Cl.Ct. 326, 328 (1990), *aff'd without op.*, 937 F.2d 622 (Fed.Cir. 1991). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–52, 106 S.Ct. at 2511–12. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Stated otherwise, if the nonmoving party cannot present the evidence to support

---

5. In general, the rules of this court are closely patterned on the Federal Rules of Civil Procedure. Therefore, precedent under the Federal Rules of Civil Procedure is relevant to interpreting the rules of this court, including Rule 56.

*See Jay v. Sec'y DHHS*, 998 F.2d 979, 982 (Fed. Cir.1993); *Imperial Van Lines Int'l Inc. v. United States*, 821 F.2d 634, 637 (Fed.Cir.1987); *Lichtefeld–Massaro, Inc. v. United States*, 17 Cl.Ct. 67, 70 (1989).

its case under any scenario, then there should be no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Id.; see also Litton Industrial Products, Inc. v. Solid State Systems Corp.*, 755 F.2d 158, 163 (Fed. Cir.1985); *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

The initial burden on the party moving for summary judgment, to produce evidence showing the absence of a genuine issue of material fact, may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *see also Lima Surgical Assocs.*, 20 Cl.Ct. at 679. If the moving party makes such a showing, the burden then shifts to the nonmoving party to demonstrate that a genuine factual dispute exists by presenting evidence which establishes the existence of an element of its case upon which it bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552; *Lima Surgical Assocs.*, 20 Cl.Ct. at 679.

Pursuant to Rule 56, the motion for summary judgment may succeed, whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553. Generally, however, in order to prevail, the nonmoving party will need to go beyond the pleadings, by use of evidence such as affidavits, depositions, answers to interrogatories and admissions, in order to demonstrate that a genuine issue for trial exists. *Id.*

In the above-captioned case, the fact that both the parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, however, does not relieve the court of its responsibility to determine the appropriateness of summary disposition in the particular case. *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987)). "[S]imply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.*, 401 F.2d 689, 692 (4th Cir.1968), *cert. denied*, 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969); *see also Levine v. Fairleigh Dickinson Univ.*, 646 F.2d 825, 833 (3d Cir.1981); *Home Ins. Co. v. Aetna Cas. & Sur. Co.*, 528 F.2d 1388, 1390 (2d Cir.1976); *Ishida v. United States*, 31 Fed.Cl. 280, 284 (1994). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently contradictory claims, however, does not establish that if one is rejected the other is necessarily justified. *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968); *Bataco Indus., Inc. v. United States*, 29 Fed.Cl. 318, 322 (1993), *aff'd*, 31 F.3d 1176 (Fed.Cir.1994). The court must evaluate each party's motion on its own merit, taking care to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc.*, 812 F.2d at 1391.

Plaintiff in this case, Arnold Champagne, was separated from the United States Navy and assigned a ten percent (10%) disability rating by the Navy after suffering an injury while on active duty. Although plaintiff does not contest the propriety of his separation from the Navy, he does contest the disability rating he received from the Navy upon separation from the service. The Navy is afforded the power, pursuant to 10 U.S.C. § 1201, and implementing regulation, 32 C.F.R. 725.101, *et seq.* (1981), to retire a service member due to a physical disability in order to "give the military forces of the Nation a vital and fit membership and to establish an equitable system of retirement and compen-

sation for those eligible members whose military careers must be terminated by reason of illness or injury." 32 C.F.R. 725.101. This regulation also prescribes "the administrative procedures and policies to be followed in implementing laws pertaining to discharge or retirement of members from the naval service because of physical disability." 32 C.F.R. § 725.102. The military's rating system is "directed to the sole question of whether the particular member of the armed forces is 'unfit to perform the duties of his office, grade, rank, or rating....'" *Bennett v. United States,* 200 Ct.Cl. 635, 644, 1973 WL 21335 (1973) (quoting 10 U.S.C. § 1204 (1958)).

When reviewing a determination of an individual's fitness for duty by a military service branch, courts routinely defer to the decisions of the military. It is well settled that the responsibility for determining who is fit or unfit for military service is not a matter for the courts to decide. *Sanders v. United States,* 219 Ct.Cl. 285, 302, 594 F.2d 804 (1979). "Strong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters." *Id.* (citing *Orloff v. Willoughby,* 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953)); *Wales v. United States,* 132 Ct. Cl. 765, 769, 130 F.Supp. 900, 903 (1955). Therefore, the task of running the military should be left to the expertise and discretion of the military. *See Gilligan v. Morgan,* 413 U.S. 1, 10, 93 S.Ct. 2440, 2445–46, 37 L.Ed.2d 407 (1973); *Brenner v. United States,* 202 Ct.Cl. 678, 685–86, 1973 WL 21354 (1973), *cert. denied,* 419 U.S. 831, 95 S.Ct. 54, 42 L.Ed.2d 56 (1974).

In *Wales v. United States,* 132 Ct.Cl. 765, 130 F.Supp. 900 (1955), the United States Court of Claims, the predecessor court to this court, helped to outline the interrelationship between a determination of unfitness for duty, and a military determination of a service member's disability rating versus the Veterans Administration disability rating scheme. The *Wales* court stated, "[n]ot all ailments or disabilities are incapacitating to the extent of requiring retirement." *Wales v. United States,* 132 Ct.Cl. at 769, 130 F.Supp. 900. The *Wales* court concluded in

italicized print: *"Eligibility for disability retirement requires physical unfitness for duty, while serving on active duty."* *Id.* at 770, 130 F.Supp. 900. Furthermore, according to the court, "the fact that the Veterans Administration rated plaintiff thirty percent (30%) disabled and granted him disability compensation does not, as plaintiff contends, entitle him to disability retirement under Section 402(a) of the Career Compensation Act of 1949 [63 Stat. 802, the predecessor to 10 U.S.C. § 1201]." *Id.* at 769, 130 F.Supp. 900.

The Secretary's discretionary authority to correct plaintiff's military records derives from 10 U.S.C. § 1552(a) (1994), which provides as follows:

> The Secretary of a military department, ... may correct any military record of that department when he considers it necessary to correct an error or remove an injustice.... Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States.

10 U.S.C. § 1552(a). The court in *Sanders v. United States* discussed the purpose of the statute and firmly established that:

> Although correction board decisions with pay consequences are reviewable here, it cannot be forgotten that Congress entrusted primary responsibility for the record-correction function to the service Secretaries acting through correction boards. Thus, while we may disagree with a correction board about whether or not a specific situation was unjust, we will not substitute our judgment for the board's when reasonable minds could reach differing conclusions.

*Sanders v. United States,* 219 Ct.Cl. at 302, 594 F.2d at 813–14; *Snell v. United States,* 168 Ct.Cl. 219, 229, 1964 WL 8544 (1964). Similarly, in the instant case, this court should not substitute its judgment for the judgment of the Navy.

In its motion for summary judgment, defendant alleges that plaintiff has failed to prove that the decisions of the PEB, the Hearing Panel of the PEB, as well as the subsequent affirmation of the decision by the

Director of Naval Council of Personnel Boards, which granted plaintiff a ten percent disability rating, were arbitrary, capricious, unsupported by substantial evidence, or contrary to statutes, regulations, or SECNAVINST 1850.46 §§ 1211 and 1219. Plaintiff claims that the PEB did not fully consider all of the evidence and chose the incorrect rating codes, thereby erroneously discharging plaintiff with severance pay under 10 U.S.C. § 1203 (1994), rather than with retired pay under 10 U.S.C. § 1201 (1994).

■■■■■ In this court, review of military disability cases is "limited to determining whether the action of the military is arbitrary, capricious, unsupported by substantial evidence or contrary to applicable statutes or regulations." *Kirwin v. United States*, 23 Cl.Ct. 497, 502 (1991) (quoting *Craft v. United States*, 210 Ct.Cl. 170, 179, 544 F.2d 468, 473 (1976)); *see also Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983); *de Cicco v. United States*, 230 Ct.Cl. 224, 228–29, 677 F.2d 66, 70 (1982). When contesting personnel actions taken by the armed forces, a plaintiff bears the burden to overcome the "strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Hary v. United States*, 223 Ct.Cl. 10, 17, 618 F.2d 704, 707 (1980); *Sanders*, 219 Ct.Cl. at 302, 594 F.2d 804; *Guy v. United States*, 221 Ct.Cl. 427, 432–33, 608 F.2d 867, 870 (1979). Otherwise stated, it is the plaintiff's burden to demonstrate that the actions of the Navy were arbitrary and capricious, contrary to law or unsupported by substantial evidence, by producing "cogent and clearly convincing evidence." *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed.Cir.1986), *cert. denied*, 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986).

■■■■■ When reviewing the decisions of the Physical Evaluation Board under the arbitrary and capricious standard, the scope of review is extremely narrow. *Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974). The actions of the military in plaintiff's case has resulted in a sizable administrative record, which includes, among other items, medical evaluations by medical experts, advisory opinions by Navy officials, advisory opinions by Veterans Affairs officials, transcripts of plaintiff's testimony, and the final opinions of the Navy's PEB, the Hearing Panel of the PEB, as well as the Director of the Naval Counsel of Personnel Boards. "[T]he standard of review does not require a reweighing of the evidence, but rather, a determination whether the conclusion being reviewed is supported by substantial evidence." *Heisig v. United States*, 719 F.2d at 1157. Thus, this court should "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment...." *Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. at 285, 95 S.Ct. at 441–42. Absent convincing proof, this court will not impute bad faith or arbitrariness to the Physical Evaluation Board. *See Wood v. United States*, 176 Ct.Cl. 737, 743, 1966 WL 8883 (1966) (citing *Furlong v. United States*, 153 Ct.Cl. 557, 563, 1961 WL 8689 (1961)).

■■■■■ Key to resolution of the dispute in the case at bar is how the Navy interpreted sections 2111 and 2112 of SECNAVINST 1850.4C when it assigned plaintiff a final disability rating. In *General Elec. Co. v. United States*, 221 Ct.Cl. 771, 610 F.2d 730 (1979), the court concluded that interpretation of regulations should be handled in the same manner as applicable to statutory construction. Similarly, this court suggests that interpretation of the Navy Instruction included in SECNAVINST 1850.4C §§ 2111 & 2112 also should be undertaken in accordance with the basic rules of statutory construction. In this regard, the United States Court of Appeals for the Federal Circuit has offered guidance on how to approach statutory interpretation, as follows:

> Statutory construction requires the application of recognized rules. *See generally Sutherland Statutory Construction* (4th ed.). First, " ' "[t]he starting point in every case involving construction of a statute is the language itself." ' " *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978). Second, where a statute states what a term "means" then all other mean-

ings not stated are excluded. *Colautti v. Franklin,* 439 U.S. 379, 392 n. 10, 99 S.Ct. 675, 684, n. 10, 58 L.Ed.2d 596 (1979). Third, clear evidence of legislative intent prevails over other principles of statutory construction. *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). Fourth, absent a very clear legislative intent, the plain meaning will prevail. *Aaron v. SEC,* 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed.2d 611 (1980). Last, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978); *National Lead Co. v. United States,* 252 U.S. 140, 146–47, 40 S.Ct. 237, 239, 64 L.Ed. 496 (1920); *Farrell Lines, Inc. v. United States,* 499 F.2d 587, 605, 204 Ct.Cl. 482 (1974); *cf. Pierce v. Underwood,* [487] U.S. [552], 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

*Johns–Manville Corp. v. United States,* 855 F.2d 1556, 1559 (Fed.Cir.1988), *cert. denied,* 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989). Moreover, if a statute is plain and unequivocal on its face, there is no need to resort to the legislative history underlying the statute. *Reid v. Department of Commerce,* 793 F.2d 277, 281 (Fed.Cir.1986) (citing *United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 1280–81, 6 L.Ed.2d 575 (1961), *reh'g denied,* 368 U.S. 870, 82 S.Ct. 24, 7 L.Ed.2d 70 (1961)). In fact, a court should resort to legislative history only if:

... a literal interpretation would lead to an incongruous result. For example, if a literal reading of the statute would impute to Congress an irrational purpose, *United States v. Bryan,* 339 U.S. 323, 338, 70 S.Ct. 724, 734, 94 L.Ed. 884 (1950), or would thwart the obvious purpose of the statute, *Trans Alaska Pipeline Rate Cases,* 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978), or would lead to a result at variance with the policy of the legislation as a whole, *Trustees of Indiana University v. United States,* 618 F.2d 736, 739, 223 Ct.Cl. 88, 94 (1980), then literal

interpretation will be eschewed in favor of resort to the legislative history to ascertain the intent of Congress. *United States v. Oregon,* 366 U.S. at 648, 81 S.Ct. at 1281; 2A Sands § 46.07.

*Reid v. Department of Commerce,* 793 F.2d at 281–82. Accepted principles of statutory construction also provide that courts must interpret a statute as a whole. *Massachusetts v. Morash,* 490 U.S. 107, 115, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989). To this effect, the Supreme Court has written:

On numerous occasions we have noted that " " "[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." " " *Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 358, 93 L.Ed.2d 216 (1986), quoting *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 221, 106 S.Ct. 2485, 2493, 91 L.Ed.2d 174 (1986) (quoting *Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 285, 76 S.Ct. 349, 359, 100 L.Ed. 309 (1956) (in turn quoting *United States v. Heirs of Boisdore,* 49 U.S. (8 How.) 113, 122, 12 L.Ed. 1009 (1849))).

*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987). *See* Sutherland Stat. Const. §§ 46.05, 46.06 (5th ed. 1992). Otherwise stated, courts must " 'give effect, if possible, to every clause and word of a statute,' " *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955) (quoting *Montclair v. Ramsdell,* 107 U.S. 147, 152, 27 L.Ed. 431 (1883)), for " '[t]he cardinal principle of statutory construction is to save and not to destroy.' " *Id.* (quoting *Labor Bd. v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 30, 57 S.Ct. 615, 621, 81 L.Ed. 893 (1937)).

In construing a statute, courts should attempt not to interpret a provision such that it renders other provisions of the same statute inconsistent, meaningless or superfluous. *Boise Cascade Corp. v. United States E.P.A.,* 942 F.2d 1427, 1432 (9th Cir. 1991). *See* Sutherland Stat. Const. § 46.06 (5th ed. 1992). The meaning of statutory language depends on context, and a statute

should be read as a whole. *King v. Saint Vincent's Hosp.,* 502 U.S. 215, 221, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991) (Souter, J.) (citing *Shell Oil Co. v. Iowa Dept. of Revenue,* 488 U.S. 19, 26, 109 S.Ct. 278, 282, 102 L.Ed.2d 186 (1988)). As stated in *King v. Saint Vincent's Hosp.,* "[w]ords are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used." *King v. Saint Vincent's Hosp.,* 502 U.S. at 221, 112 S.Ct. at 574 (quoting *NLRB v. Federbush Co.,* 121 F.2d 954, 957 (2nd Cir.1941) (L. Hand, J.)). Therefore, when reviewing the statute at issue in this case, this court must construe each part of a statute in connection with all the other sections, so as to produce a harmonious whole. Moreover, common sense requires that the same words used twice in the same act should have the same meaning. *See* Sutherland Stat. Const. § 46.06 (5th ed. 1992).

▆▆▆ Moreover, when reviewing an agency's construction of a statute it administers, courts have shown great deference to the interpretation given by that agency. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984); *Katsis v. Immigration & Naturalization Service,* 997 F.2d 1067, 1069 (3rd Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 902, 127 L.Ed.2d 93 (1994); *see also Wassenaar v. Office of Personnel Management,* 21 F.3d 1090, 1092 (Fed Cir.1994). "[T]he courts must respect the interpretation of the agency to which Congress has delegated the responsibility for administering the statutory program." *Katsis,* 997 F.2d at 1070 (quoting *INS v. Cardoza–Fonseca,* 480 U.S. 421, 448, 107 S.Ct. 1207, 1221–22, 94 L.Ed.2d 434 (1987)).

▆▆▆ Therefore, when the meaning of military regulations and instructions are at issue, the armed service's own interpretation must be given controlling weight and deference, especially when it has been consistently interpreted over a long period of time. *United States v. Clark,* 454 U.S. 555, 565, 102 S.Ct. 805, 811–12, 70 L.Ed.2d 768 (1982);

*Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed. Cir.1986), *cert. denied,* 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986); *Cameron v. United States,* 34 Fed.Cl. 422, 431 (1995). If the applicable regulations are interpreted by the armed services in a reasonable manner, any charge of procedural irregularity must fail, even though the plaintiff may present another reasonable interpretation of the regulation. *Wronke v. Marsh,* 787 F.2d at 1573. Thus, where a military regulation is susceptible to equally reasonable constructions, a court may not substitute an alternative interpretation for the interpretation of the military service. *Id.*

Section 2111 of SECNAVINST 1850.4C states, in its entirety, as follows:

> Some cases will not show all the findings specified in the VASRD. Where there is a question as to which of two percentage evaluations shall be applied, the higher evaluation will be assigned if the service member's disability more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. When after careful consideration of all reasonably procurable and assembled data, there remains a reasonable doubt as to which rating shall be applied, such doubt will be resolved in favor of the member.

SECNAVINST 1850.4C § 2111.

SECNAVINST 1850.4C § 2112, which discusses pyramiding, in its entirety, reads as follows:

> Pyramiding is the term used to describe the application of more than one rating to any area or system of the body when the total functional impairment of that area or system is adequately reflected under a single appropriate code. Disability from injuries to the muscles, nerves, and joints of an extremity may overlap to a great extent and special rules for their evaluation are included in appropriate sections of the VASRD and in enclosure (4) to this instruction. Related diagnoses should be merged for rating purposes when the VASRD provides a single code covering all their manifestations. This prevents pyramiding and reduces the chances of overrating. For example, disability from fracture

of a tibia with malunion, limitations of dorsiflexion, eversion, inversion, and traumatic arthritis of the ankle would be evaluated under one diagnostic code 5262, in accordance with the effect upon ankle function, with no separate evaluation for the limitation of motion or traumatic arthritis.

In addition, SECNAVINST 1850.4C § 5280 provides that a rationale shall state the basis for the findings reached.[6]

Plaintiff alleges that the Navy's interpretation of SECNAVINST 1850.4C § 2111 violates maxims of statutory interpretation by unnecessarily limiting the application of § 2111. Plaintiff contends that because "the text of [the] statutory provision does not mention a limitation, no limitation [should] be implied." Plaintiff asserts that section 2111 of SECNAVINST 1850.4C does not exclude choices of diagnostic codes and also requires the Navy to assign the VASRD code which would result in the higher disability rating.

■ Disability ratings are to be based on the nature of a claimant's injury. Most reasonably construed, SECNAVINST 1850.4C § 2111 instructs that when a medical board is choosing between a mild and moderate disability percentage rating, reasonable doubt should grant the service member the higher rating in keeping with SECNAVINST 1850.4C § 2111, if the medical disability more nearly approximates the disability for that rating. The choice of VASRD diagnostic codes, however, should be based strictly on a service member's medical condition. Section 2111 does not give the PEB permission to ignore a claimant's medical condition and choose a VASRD diagnostic code based on which code has the highest minimum disability percentage rating, ignoring, as in this case, that plaintiff's brachioplexopathy condition was determined to be mild or minimal.

In the case at bar, VASRD Code 8510, the code section plaintiff alleges he should have been rated under, carries a minimum rating of twenty percent (20%), whereas VASRD Code 8518, the code section under which the Secretary of the Navy chose to rate plaintiff, has a minimum rating of zero percent. If rated under VASRD Code 8510, plaintiff would have received a combined disability rating of thirty percent and would be entitled to retirement disability pay. Defendant, however, contends that the Navy's selection of a diagnostic code in the VASRD was based upon the medical condition of the claimant, not on the percentage rates assigned to the given code. Moreover, defendant asserts that no reasonable doubt existed as to the nature of plaintiff's medical condition and, therefore, no doubt existed as to the appropriate VASRD code to apply. Despite plaintiff's fervent belief that section 2111 of SECNAVINST 1850.4C should be broadly construed, the language of the guideline implicitly limits its application. Section 2111 unambiguously permits choice of VASRD disability codes only in situations in which "reasonable doubt" exists as to which code is best suited to a service member's medical condition.

■ In his filings with this court, plaintiff refers to a report, dated March 15, 1993, issued by the Department of Veterans Affairs. In that report, plaintiff was rated by the Department of Veterans Affairs as eligible for a forty percent (40%) disability rating, based on left cervical brachioplexopathy (dominant), cervical spondylosis and bilateral formanical stenosis and reactive airways disease with allergies, effective August 4, 1992. Plaintiff contends that a forty percent (40%) disability rating for plaintiff set by the VA is relevant evidence that the Navy acted arbitrarily, capriciously, and contrary to law when it assigned a lower disability rating to plaintiff. Although it is true that both the military and the VA utilize the Veterans Administration Schedule of Rating Disabilities (VASRD), the two agencies utilize the rating systems for different purposes. *Golding v. United States,* 131 Ct.Cl. 677, 679–80, 130 F.Supp. 628, 630 (1955); *Wales v. United States,* 132 Ct.Cl. 765, 769, 130 F.Supp. 900, 903 (1955). As discussed above, decisions by the Navy use a standard of review designed to determine unfitness to perform the duties of office, grade, rank, or rating because of

---

6. In this regard, although plaintiff alleges a violation of this requirement, defendant asserts that the Hearing Panel did not violate this requirement because the disability evaluation findings were forwarded to plaintiff on April 24, 1992, by the president of the PEB.

disease or injury incurred or aggravated while entitled basic pay. 10 U.S.C. § 1201. In contrast, the VA determines disability ratings based upon an evaluation of whether and how an individuals's capacity to perform in the civilian world is diminished by a disability. 38 U.S.C. § 355 (1988). According to 38 C.F.R. § 4.1, the VA uses the rating schedule primarily as:

... a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations.

38 C.F.R. § 4.1 (1994).

██ Although a VA rating decision may be relevant to consideration of an appropriate disability rating by the Navy, it is not binding on the Navy. *See Bennett v. United States,* 200 Ct.Cl. at 643–44; *see also Unterberg v. United States,* 188 Ct.Cl. 994, 1003, 412 F.2d 1341, 1346 (1969); *Williams v. United States,* 186 Ct.Cl. 611, 405 F.2d 890 (1969), *cert. denied,* 396 U.S. 966, 90 S.Ct. 447, 24 L.Ed.2d 432 (1969). The VA's decision is to be considered along with the other evidence presented by the plaintiff for the court's consideration. *Bennett v. United States,* 200 Ct.Cl. at 644 (citing *Wesolowski v. United States,* 174 Ct.Cl. 682, 693, 1966 WL 8857 (1966)).

As explained in an earlier decision issued by the United States Court of Claims:

So far as the action of the Veterans Administration is concerned, we have many times held that the basis for its action is different from the basis upon which a retiring board determined whether or not an officer is entitled to retirement for physical disability, and that a finding by the Veterans Administration, that a plaintiff is disabled, does not show that the finding of the Retirement Board, that he was not entitled

to retirement pay for physical disability, is arbitrary or capricious or even erroneous. *Furlong,* 153 Ct.Cl. at 565 (citing *Johnson v. United States,* 138 Ct.Cl. 81, 149 F.Supp. 648 (1957), *cert. denied,* 355 U.S. 850, 78 S.Ct. 69, 2 L.Ed.2d 54 (1957)); *Wales v. United States,* 132 Ct.Cl. 765, 130 F.Supp. 900 (1955); *Holliday v. United States,* 128 Ct.Cl. 647, 649, 1954 WL 6083 (1954).

Plaintiff now contends that his condition is more analogous to the findings listed in VASRD Code 8510, the rating used by the VA, than to VASRD Code 8518, under which he was rated by the Navy.[7] There is, however, sufficient evidentiary support in the record before the court to validate the disability rating assigned to the plaintiff by the Navy. Moreover, the evidence in the record does not support a claim of elbow movement loss by the plaintiff, which is an element of achieving a rating under VASRD Code 8510. The medical evidence also consistently cited to the plaintiff's brachioplexopathy condition as mild. Moreover, on October 28, 1991, the Medical Board noted that plaintiff was receiving physical therapy "with gradual decrease in pain and improving strength." The PEB findings, supported by the medical records, concluded that plaintiffs "dominant left shoulder nerve impairment is minimal according to medical record entries." The PEB also categorized plaintiff's nerve damage as mild and noted that a physical examination revealed that plaintiff had full shoulder range of motion, minimally decreased strength and slightly decreased sensation. Furthermore, when determining which disability rating to apply, it is only natural for the Navy to "accord greater weight to the opinions of the physicians who saw, heard, interviewed, and examined the patient than is given to the opinions of physicians who reviewed a paper record only." *Cooper v. United States,* 178 Ct.Cl. 277, 311, 1967 WL 8855 (1967). As stated by Judge Cowen in *Cooper v. United States:* "All laymen, lawyers, or administrators, must be wary of their conclusions in weighing medical testi-

---

7. VASRD Diagnostic Code 8510 covers paralysis of the upper radicular group (fifth and sixth cervicals) and carries a minimum rating of twenty percent (20%) whereas VASRD Diagnostic Code 8518 covers paralysis of the circumflex nerve and carries a minimum rating of zero percent. 38 C.F.R. § 4.124a. When plaintiff was being reviewed by the PEB and the PEB Hearing Panel, he was requesting a rating pursuant to VASRD Code 8518.

mony, lest they lose important nuances and wander as far afield as might a physician attempting a judgment on the Rule against Perpetuities." *Id.*

Furthermore, "[a]lthough the court might disagree with the board's decision, it cannot substitute its own judgment for that of the board if reasonable minds could reach differing resolutions of a disputed fact." *Quailes v. United States,* 25 Cl.Ct. 659, 663 (1992), *aff'd,* 979 F.2d 216 (Fed.Cir. 1992) (citing *Heisig v. United States,* 719 F.2d at 1156)). Thus, in the instant case, the Navy's determination awarding plaintiff a ten percent disability rating for the diagnosed brachioplexopathy, conforming with mild or minimal impairment, was supported by substantial and credible evidence in the record and the court agrees that the Navy's choice of VASRD Code 8518 was proper.

Plaintiff also alleges that the Navy violated SECNAVINST 1850.4C § 2112 by refusing to rate his cervical spondylosis and bilateral stenosis separately. Defendant rejects this contention, asserting that there is a connection between the two conditions with inseparable manifestations, and thus there should not be separate ratings for plaintiff's spondylosis and stenosis. The PEB concluded that plaintiff's shoulder weakness and discomfort were due to minimal nerve impairment, and could not be rated separately without violating the SECNAVINST 1850.4C § 2112 guidance against pyramiding.

Under both the VASRD and SEC-NAVINST guidelines, pyramiding of diagnoses is to be avoided when rating a disability. 38 C.F.R. § 4.14 (1994), SECNAVINST 1850.4C § 2112; *see also Thompson v. United States,* 195 Ct.Cl. 468, 478, 1971 WL 17829 (1971). In order for a disability to be rated separately, there must be a distinct and separate injury. For example, in *Wolf v. United States,* 168 Ct.Cl. 24, 31, 1964 WL 8538 (1964), the court held that a combination of ratings for separate functions to both the large and small intestine did not constitute improper pyramiding because of the separate and distinct functions and manifestations involved in each disability.

As stated previously, this court should not reject disability determinations of the Secretaries of the armed services, unless such determinations are proven to be "arbitrary, capricious, or unsupported by substantial evidence." *Heisig v. United States,* 719 F.2d at 1156. In the present case, the plaintiff has failed to prove that the Navy erred when it considered plaintiff's injury as manifestations of a single disability, and refused to engage in pyramiding, as directed by the operative guidelines. The court finds that the actions of the PEB in assigning plaintiff a disability rating of ten percent (10%) were not arbitrary, capricious or contrary to SECNAVINST 1850.4C § 2112.

Finally, in his complaint, plaintiff alleges that the Navy violated SECNAVINST 1850.4C § 5280, which states, ". . . a rationale shall be prepared and shall state the basis for the findings reached." In plaintiff's subsequent filings with this court, however, he has accorded this allegation minimal attention. The court directs plaintiff to the administrative record, which shows that on April 24, 1992, the president of the PEB forwarded the disability evaluation findings to plaintiff. In this document, the PEB provided plaintiff with the basis and rationale for their findings.

Specifically, in its April 24, 1992 reports and enclosure titled "San Diego Hearing Panel Rationale in the case of BMCM, Arnold Champagne, USNR, 470 46 1374," the PEB Hearing Panel concluded that plaintiff was unfit for duty in the Navy due to the reactive airway disease that prevented him from working in smoky/dusty environments and due to the left C5 brachioplexopathy finding, both of which were improving. In that report, categorizing plaintiff's condition as mild, the PEB concluded that plaintiff's reactive airways disease was ratable for disability purposes at ten percent (10%). The PEB further explained that "the dominant left shoulder nerve impairment is minimal according to medical record entries but is also considered unfitting afloat due to weakness." Therefore, the mild nerve damage was rated at zero percent (0%) disability under VASRD Code 8518. Finally, the PEB explained that as "[t]he shoulder weakness

and discomfort is due to the nerve damage ... [t]he shoulder cannot be rated without further pyramiding." Thus, as the plaintiff was provided a rationale for the PEB findings, the Navy cannot be found to have violated SECNAVINST 1850.4C § 5280.

## CONCLUSION

After careful review of the record before this court and the applicable law, the court concludes that defendant has met its burden of proof on summary judgment. For the reasons set forth above, plaintiff has failed to provide evidence that the Navy's decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law or applicable regulations. Therefore, defendant's motion for summary judgment is, hereby, **GRANTED** and plaintiff's cross-motion for summary judgment is, hereby, **DENIED.**

**IT IS SO ORDERED.**